IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ORACLE AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-621 (RGA) |
| | ) | |
| GEOTAG, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO GEOTAG'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

<table>
<tr><td></td><td>MORRIS, NICHOLS, ARSHT & TUNNELL LLP</td></tr>
<tr><td></td><td>Thomas C. Grimm (#1098)</td></tr>
<tr><td></td><td>1201 N. Market Street</td></tr>
<tr><td></td><td>P.O. Box 1347</td></tr>
<tr><td></td><td>Wilmington, DE  19899-1347</td></tr>
<tr><td>OF COUNSEL:</td><td>(302) 658-9200</td></tr>
<tr><td></td><td>tgrimm@mnat.com</td></tr>
<tr><td>Jason C. Kravitz</td><td>*Attorneys for Plaintiff*</td></tr>
<tr><td>NIXON PEABODY LLP</td><td></td></tr>
<tr><td>100 Summer Street</td><td></td></tr>
<tr><td>Boston, MA  02110</td><td></td></tr>
<tr><td>(617) 345-1000</td><td></td></tr>
</table>

David C. McKone
NIXON PEABODY LLP
300 S. Riverside Plaza
16th Floor
Chicago, IL 60606
(312) 425-3900

July 9, 2012

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................... ii

I.      Introduction ........................................................................................................1

II.     Nature and Stage of the Proceeding ..................................................................1

III.    Summary of Argument .......................................................................................2

IV.     Statement of Facts ..............................................................................................3

V.      Argument ............................................................................................................5

        A.     Legal Standard ........................................................................................5

        B.     This Court Has Personal Jurisdiction Over GeoTag ...............................7

               1.     Personal Jurisdiction Is Proper Because GeoTag Was a Delaware
                      Corporation When the Activities Giving Rise to the Action Occurred ...... 7

               2.     GeoTag's Incorporation in Delaware Was a Transaction of Business
                      Giving This Court Specific Personal Jurisdiction .................................... 10

               3.     If Necessary, Oracle Requests the Opportunity to Take Jurisdictional
                      Discovery ................................................................................................. 15

        C.     The Court Should Not Transfer the Case - Venue is Proper in Delaware ........... 16

               1.     The Case Should Not be Transferred Under the First-Filed Rule ........... 16

               2.     The Private and Public Interest Factors Do Not Favor Transfer ............. 19

VI.     Conclusion ........................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanta Corp. v. Visa U.S.A., Inc.*,
    1997 WL 88906 (E.D. Penn., Feb. 19, 1997) ..........................................................................18

*Arnold v. Society for Savings Bancorp, Inc.*,
    1993 Del. Ch. LEXIS 275 (Del. Ch. Dec. 15, 1993) ...................................................11, 12, 14

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*,
    552 F.3d 1324 (Fed. Cir. 2008)...................................................................................... passim

*Boston Sci. Corp. v. Wall Cardiovascular Techs., LLC*,
    647 F.Supp.2d 358 (D. Del. 2009).........................................................................................11

*Cole v. Caterpillar Machinery Corp.*,
    562 F.Supp. 179 (M.D. La. 1983).....................................................................................8, 10

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
    395 F.3d 1315 (Fed. Cir. 2005)..............................................................................................15

*Duris v. Erato Shipping, Inc.*,
    684 F.2d 352 (6th Cir. 1982) ...................................................................................................8

*G&G LLC v. Verdi White, III*,
    535 F. Supp. 2d 452 (D. Del. 2008)........................................................................................19

*Goffe v. Blake*,
    605 F.Supp. 1151 (D. Del. 1985)........................................................................................8, 9

*Honeywell Int'l Inc. v. Apple Computer, Inc.*,
    2008 U.S. Dist. LEXIS 32857 (D. Del. 2008) .......................................................................15

*Horton Archery v. American Hunting Innovations, LLC*,
    2010 WL 395572 (N.D. Ohio, Jan. 27, 2010).........................................................................18

*In re Link-A-Media Devices Corp.*,
    662 F.3d 1221 (Fed. Cir. 2011)................................................................................................6

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir.1995).........................................................................................................6

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990)..............................................................................................16

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)..................................................................................................................9

*Microsoft Corp. v. GeoTag Inc.*,
  2012 WL 114128 (D. Del. Jan. 13, 2012)..............................................................16, 17, 19, 20

*Red Wing Shoe Co., Inc. v. Hockerson-Balberstadt, Inc.*,
  148 F.3d 1355 (Fed. Cir. 1998)..............................................................................................5, 6

*Ricoh Co., Ltd. V. Aeroflex Inc.*,
  279 F. Supp. 2d 554 (D. Del. 2003).........................................................................................16

*Shire U.S., Inc. v. Johnson Matthey, Inc.*,
  543 F.Supp.2d 404 (E.D. Penn. 2008) ...............................................................................18, 19

*Spread Spectrum Screening, LLC v. Eastman Kodak Co.*,
  2010 U.S. Dist. LEXIS 90549 (N.D. Ill. Sept. 1, 2010) .........................................................18

STATUTES

8 Del. C. § 122(2) .......................................................................................................5, 7, 9

8 Del. C. § 252(d) ..............................................................................................................9

8 Del. C. § 259 ..................................................................................................................8

8 Del. C. § 259(a) .........................................................................................................8, 10

10 Del. C. § 3104(c).....................................................................................................11, 12

28 U.S.C. § 1404(a) ........................................................................................................2, 6

## I.      INTRODUCTION

This Court has personal jurisdiction over GeoTag.  GeoTag created this dispute by forming itself as a Delaware corporation with the sole purpose of suing for patent infringement in the Eastern District of Texas and proceeding to sue Oracle's customers.  Since then, GeoTag has reincorporated in Texas, admittedly to avoid being held accountable in Delaware for its Delaware activities.  However, the law does not allow GeoTag to run from its Delaware responsibilities through such strategic reincorporation.  Rather, GeoTag's Delaware contacts are still attributed to it, even in its Texas form.  Moreover, since its reincorporation, GeoTag has filed and continues to pursue infringement counterclaims on the same patent in Delaware against Microsoft and Google.  GeoTag's Motion to Dismiss should be denied.

Venue is also proper in Delaware and GeoTag's Motion to Transfer should also be denied.  GeoTag merely rehashes the arguments it made to this Court in its failed bid to transfer the *Microsoft Corp. v. GeoTag Inc.* case to Texas.  Oracle is in the same position as Microsoft and Google for the purpose of GeoTag's transfer motion and the result, denial, should be the same.

## II.     NATURE AND STAGE OF THE PROCEEDING

On March 11, 2011, Microsoft Corp. ("Microsoft") and Google Inc. ("Google") filed a declaratory judgment action in this Court seeking a declaration of invalidity and noninfringement of GeoTag, Inc.'s U.S. Patent No. 5,930,474 ("the '474 patent").  *See* 1:11-cv-00175-RGA ("the *Microsoft* action") D.I. 1.  GeoTag did not contest personal jurisdiction in the Microsoft action. On March 26, 2012, Taleo Corp. ("Taleo") moved to intervene in the *Microsoft* action.  *See* 1:11-cv-00175-RGA D.I. 51.  On May 18, 2012, the Court denied Taleo's motion over concerns that permitting Taleo to intervene would delay the schedule in the *Microsoft* action (which the existing parties strongly opposed).  *See* 1:11-cv-00175-RGA D.I. 97.  The same day, Taleo

commenced this action.  *See* D.I. 1.  On June 21, 2012, GeoTag filed its Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue.  *See* D.I. 4.  On June 27, 2012, pursuant to a stipulation following the acquisition of Taleo by Oracle America, Inc. ("Oracle"), the Court substituted Oracle for Taleo as plaintiff.   *See* D.I. 7.   Oracle hereby opposes GeoTag's Motion.

## III.   SUMMARY OF ARGUMENT

1.      This Court has general personal jurisdiction over GeoTag based on GeoTag's status as a Delaware corporation when it filed its lawsuits against Oracle's customers.

2.      GeoTag cannot merge away its responsibilities in Delaware.  Rather, its acts as a Delaware corporation are attributable to the surviving Texas corporation following the merger for the purposes of determining personal jurisdiction.

3.      GeoTag's incorporation in Delaware for the purpose of bringing patent infringement lawsuits, and its patent infringement counterclaims on the same patent in the *Microsoft* case, constitute transactions of business in Delaware related to enforcement of the patent permitting the Court to exercise specific personal jurisdiction over GeoTag pursuant to Delaware's long-arm statute.

4.      The Court should not transfer the case to Texas pursuant to the "first-filed" rule. To the extent that the Texas cases are the "first-filed" cases, this case fits squarely within the "customer suit exception" to the "first-filed" rule.

5.      The Texas cases are not "first-filed" cases because they do not involve nearly identical parties or issues.  While overlapping, the Delaware case seeks to resolve all disputes between GeoTag and Oracle, while the Texas cases involve only a subset of their disputes.

6.      GeoTag points to no convenience factors that support its motion to transfer under 28 U.S.C. § 1404(a) and points to nothing distinguishing this case from the Court's previous

2

denial of GeoTag's motion to transfer the *Microsoft* action to Texas.  The Court should deny GeoTag's current motion for the same reasons.

## IV.    STATEMENT OF FACTS

According to GeoTag's Brief, GeoTag incorporated in Delaware on July 16, 2010 ("GeoTag-Delaware"), as a reincorporation of Ubixo Inc.   According to its Securities and Exchange Commission filings, GeoTag-Delaware was a "spin-off" of a "non-core business" of Ubixo Limited.  Jan. 4, 2011, Amendment No. 1 to Form S-1 Registration Statement (Decl. at ¶ 6, Ex. 1) at 1.  The non-core business for which GeoTag-Delaware was formed was asserting the '474 patent in patent infringement lawsuits.  *See* Ex. 1 at 2-3 ("We expect to execute patent licensing arrangements with users of the GEOTAG Technology through either willing licensing negotiations without the filing of patent infringement litigation, or, if necessary, through the negotiation of license and settlement arrangements in connection with the filing of patent infringement litigation.").   GeoTag-Delaware had "a single material asset, namely the '474 Patent, from which [it] expect[ed] to generate substantially all of [its] revenue."  *See* Ex. 1 at 5-6. GeoTag-Delaware's stated business plan, for which it incorporated in Delaware, was to sue alleged patent infringers in the United States District Court for the Eastern District of Texas.  *See* Ex. 1 at 23.

Consistent with its business plan, GeoTag-Delaware brought several lawsuits against hundreds of defendants in the Eastern District of Texas alleging infringement of the '474 patent, Case Nos. 2:11cv421, 2:11cv423, 2:11cv424, 2:11cv425, 2:11cv426, 2:11cv405, 2:11cv404, 2:11cv403, 2:11cv175, 2:10cv587, 2:10cv574, 2:10cv575, 2:10cv570, 2:10cv571, 2:10cv572, 2:10cv573, 2:10cv272, 2:10cv265, and 2:12cv00043.  GeoTag filed all except one of these cases prior to October 10, 2011.  *See* Decl. at ¶ 7.  GeoTag-Delaware originally asserted its patent against the "store locator" or "product locator" features of the defendants' respective websites.

*See, e.g.,* Decl. at ¶ 8, Ex.2.  However, around October 2011, GeoTag-Delaware began accusing job search databases of infringement.  *See* Decl. at ¶ 10.  As set forth in Taleo's Motion to Intervene in the *Microsoft* action (1:11-cv-00175-RGA D.I.52 at 6-8 and 14-15 and D.I. 79 at 6-8), several of the Texas defendants accused of infringing through job search databases are customers of Oracle and have sought indemnity from Oracle.  *See also* Decl. at ¶¶ 9-13.  Four additional customers have demanded indemnity since that motion was denied.  *See* Decl. at ¶ 14.

The majority of the sixteen Oracle customers sued in Texas are not Texas companies. Rather, like Taleo and Oracle, nine are Delaware corporations.  *See* Decl. at ¶ 15.  Only one is incorporated in Texas.  *See id.*  These customers have principal places of business around the country, with only four having principal places of business in Texas.  *See id.*

On March 11, 2011, Microsoft and Google filed a declaratory judgment action in this Court seeking a declaration of invalidity and noninfringement of the '474 patent.  *See* 1:11-cv-00175-RGA D.I. 1.  Like Oracle, Microsoft and Google are indemnifying several defendants in the Texas actions accused of infringement based on Microsoft and Google technology.  GeoTag answered Microsoft and Google's complaint on February 13, 2012, and raised counterclaims of infringement of the '474 patent.  *See* 1:11-cv-00175-RGA D.I. 36 (Decl. ¶ 16, Ex.3).  The infringement counterclaims brought by GeoTag were not commensurate in scope with Microsoft and Google's noninfringement claims, or GeoTag's infringement claims in the Texas actions. Rather, in response to Microsoft and Google's complaint, GeoTag made clear that "GeoTag's claim of infringement of the '474 Patent against Google relating to the provision [of] store locator services to any of its customers is based only upon Google's internal use of the inventions claimed by the '474 patent and is not based upon Google's sale or distribution of any

store locator services to any third party, including any other person who has been sued by GeoTag for infringement of the '474 patent." Ex. 3 at ¶ 18; *see also id.* at ¶ 7 (for Microsoft).

GeoTag also accused several Google and Microsoft products (including search engines) that are not accused in Texas. *See* Ex. 3 at ¶¶ 8, 19. GeoTag-Texas continues to pursue those counterclaims today, availing itself of the Delaware courts to affirmatively assert its patent. On March 14, 2011, Where 2 Get It, Inc. filed a similar declaratory judgment action in this Court. *See* 1:11-cv-00223-RGA ("*W2GI*") D.I. 1. In an attempt to avoid further declaratory judgment actions in Delaware, on October 10, 2011, GeoTag-Delaware formed GeoTag, Inc., in Texas ("GeoTag-Texas") and merged with GeoTag-Texas. According to GeoTag's brief, at 8, "GeoTag terminated its incorporation in the State of Delaware to avoid being sued again in Delaware regarding the '474 patent."

## V.    ARGUMENT

### A.    Legal Standard

In patent cases, personal jurisdiction is evaluated under Federal Circuit law. *See Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.,* 552 F.3d 1324, 1328 (Fed. Cir. 2008). However, this generally requires an analysis of state law, as it "depends on whether the defendant 'could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district is located." *Red Wing Shoe Co., Inc. v. Hockerson-Balberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). Delaware corporations are subject to general personal jurisdiction in Delaware courts. *See* 8 Del. C. § 122(2) ("Every corporation created under this chapter shall have power to: . . (2) Sue and be sued in all courts and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding, in its corporate name.").

On the other hand, "[d]etermining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service

of process, and whether the assertion of personal jurisdiction would violate due process." *Avocent,* 552 F.2d at 1329.  If GeoTag's contacts with Delaware have been "continuous and systematic," it may be subject to general jurisdiction in Delaware to answer to causes of action with no relation to those contacts. *Red Wing*, 148 F.3d at 1359.  However, even if GeoTag had only a single contact with Delaware, it may be subject to specific jurisdiction if the cause of action "arises out of or relates to" that contact. *Id.*  Once sufficient contacts in Delaware are shown, the court can consider other "relevant factors," such as "[1] the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies." *Avocent*, 552 F.3d at 1331.  However, in order to defeat jurisdiction, GeoTag "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

Although Oracle bears the burden of establishing jurisdiction, "[i]n this case, because the parties have not conducted discovery, [Oracle] need[] only to make a prima facie showing that [GeoTag is] subject to personal jurisdiction.  As such, the pleadings and affidavits are to be construed in the light most favorable to [Oracle]." *Avocent*, 552 F.3d at 1328-29.

Motions to transfer under 28 U.S.C. § 1404(a) are evaluated under regional circuit law, here, Third Circuit law.  *In re Link-A-Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011).  The burden of establishing the need for transfer is GeoTag's.  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995).  In deciding whether to transfer the case, the court considers various "private interests" including "plaintiffs forum preference as manifested in the original choice," which is of "paramount importance," "the defendant's preference," and several

others, as well as several "public interests."  *Id.* at 879-80.  As set forth *infra*, these private and public interest factors favor Delaware as the appropriate forum for this dispute.

### B.  This Court Has Personal Jurisdiction Over GeoTag

#### 1.  Personal Jurisdiction Is Proper Because GeoTag Was a Delaware Corporation When the Activities Giving Rise to the Action Occurred

This Court has personal jurisdiction over GeoTag because it was a Delaware corporation when it brought the Texas lawsuits giving rise to Oracle's declaratory judgment action here. GeoTag admits that it was a Delaware corporation from at least July 16, 2010, to October 10, 2011, which includes the time period when most of the Texas actions were filed.[1]  Delaware courts have general personal jurisdiction over Delaware corporations.  *See* 8 Del. C. § 122(2); Restatement of the Law, Second, Conflict of Laws § 41 ("A state has power to exercise judicial jurisdiction over a domestic corporation") and comment b to § 41 ("Incorporation in the state gives the state a basis for the exercise of personal jurisdiction over the corporation in any action that may there be brought against it.").  GeoTag does not appear to contest this black-letter principle, and indeed has never challenged this Court's personal jurisdiction over it in suits filed by Microsoft, Google, and Where 2 Get It (filed while GeoTag was a Delaware corporation).

Regretting its decision to incorporate in Delaware, GeoTag recently reincorporated in Texas, which it repeatedly admits it did in an attempt to evade this Court's jurisdiction.  *See* Br. at 8 ("GeoTag terminated its incorporation in the State of Delaware to avoid being sued again in Delaware regarding the '474 patent."); *W2GI*, Mar. 6, 2012, Hearing Tr. at 15:10-18 ("Geotag, at the time this motion [to intervene] was filed . . . was no longer a Delaware corporation. . . .  It did that for a reason.  It wanted to control where it was going to be sued.") (Decl. ¶ 18, Ex. 5).

---

[1]      During the time in which GeoTag was incorporated in Delaware, it filed an annual report and paid an annual corporation fee.  *See* Decl. ¶ 17, Ex. 4.  GeoTag also paid nearly $50,000 in Delaware tax.  *See id.*

GeoTag now contends that by reincorporating in Texas it divested Delaware of personal jurisdiction, even for activities occurring while it was a Delaware corporation.  It is wrong; a Delaware corporation cannot merge away its responsibilities.  "As a general proposition, actions and conduct of a constituent corporation[2] may be attributed to the surviving corporation following a merger for purposes of determining the surviving corporation's amenability to personal jurisdiction for liabilities incurred by the constituent corporation."  *Goffe v. Blake*, 605 F. Supp. 1151, 1154 (D. Del. 1985).  The actions and conduct of constituent corporation GeoTag-Delaware, then, are attributed to surviving corporation GeoTag-Texas for determining whether the Court has personal jurisdiction over GeoTag-Texas for GeoTag-Delaware's actions.  *See Goffe*, 605 F. Supp. at 1154; *Cole v. Caterpillar Machinery Corp.*, 562 F. Supp. 179 (M.D. La. 1983) ("When [constituent corporation] merged with [surviving corporation], it did cease to exist as a separate entity, but its liabilities and assets were assumed by the successor [surviving] corporation. . . .").

The Delaware corporate statute explicitly requires a foreign surviving corporation to answer for the actions of its Delaware constituent corporation after a merger.  It states that "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it."  8 Del. C. § 259(a).  The Sixth Circuit held that a similar Ohio statute (Section 1701.82(a)[3]) subjected a surviving

---

[2]    GeoTag-Delaware merged into GeoTag-Texas, and thereafter GeoTag-Delaware ceased to exist.  In the terminology of the Delaware statute (*e.g.*, 8 Del. C. § 259), GeoTag-Delaware is the "constituent" corporation and GeoTag-Texas is the "surviving" corporation.

[3]    "The surviving or new corporation is liable for all obligations of each constituent corporation, including liabilities of defending share-holders.  Any claim existing or action or proceeding pending, by or against any constituent corporation, may be prosecuted to

corporation to personal jurisdiction based on its constituent corporation's pre-merger Ohio contacts. *See Duris v. Erato Shipping, Inc.*, 684 F.2d 352, 356 (6th Cir. 1982). The Delaware statute even provides a mechanism for serving the surviving corporation with process in Delaware to answer for the obligations of its Delaware constituent corporation[4]. *See* 8 Del. C. § 252(d).

This Court has general personal jurisdiction over GeoTag-Delaware because it was a Delaware corporation and could "be sued in all courts and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding . . ." in Delaware. 8 Del. C. § 122(2). Because GeoTag-Delaware's contacts with Delaware are attributed to GeoTag-Texas, the Court has general personal jurisdiction over GeoTag-Texas, at least with respect to GeoTag-Delaware's pre-merger activities (which include prosecuting the Texas lawsuits, the very acts that created a "substantial controversy" between Oracle and GeoTag, *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

GeoTag-Delaware's contacts with Delaware are attributable to GeoTag-Texas in this case because this lawsuit is based on GeoTag-Delaware's conduct of its core business. *See Goffe*, 605 F. Supp. at 1154. GeoTag-Delaware did not make or sell anything. Its stated (and only) corporate purpose was to sue (or threaten to sue) in Texas in order to extract settlements. *See* Ex. 1 at 23. GeoTag-Delaware was in the business of patent lawsuits, and it took advantage of Delaware law to set up a corporate structure to transact that business. As a Delaware corporation, it sued hundreds of defendants in Texas, including customers of Oracle. GeoTag-

---

judgment, with right of Appeal, as if such merger or consolidation had not taken place, or the surviving or new corporation may be substituted in its place."

[4]   By agreement with GeoTag, Oracle served process upon GeoTag's attorneys. *See* Decl. ¶ 19, Ex. 6. Absent this agreement, Oracle could have served GeoTag pursuant to Section 252.

Texas merely continues in that business, primarily by prosecuting the lawsuits started by GeoTag-Delaware.  The lawsuits started by GeoTag-Delaware, directed at Oracle's customers and products, created the substantial controversy of this lawsuit.  GeoTag-Delaware's lawsuits have caused Oracle harm, GeoTag-Texas has assumed the responsibilities of GeoTag-Delaware as to the activities that caused the harm, *see* 8 Del. C. § 259(a), and therefore GeoTag-Delaware's contacts with Delaware are attributable to GeoTag-Texas.  The reasoning for attributing GeoTag's pre-merger Delaware contacts to GeoTag-Texas is clear: "Any other ruling would allow corporations to immunize themselves by formalistically changing their titles."  *Id.*

GeoTag readily admits that it is using reincorporation in an attempt to immunize itself from having to answer in Delaware, stating that it wants to "control where it is going to be sued." *W2GI*, Mar. 6, 2012, Hearing Tr. at 15:10-18 (Ex. 5).  However, GeoTag-Delaware availed itself of the laws and protections of Delaware when it established its corporate existence there. GeoTag-Texas continues to avail itself of the protections of this Court by prosecuting its infringement actions against Microsoft and Google, including pursuing counterclaims it admits are unrelated to the infringement actions it brought in Texas.  GeoTag should not now be permitted to abdicate the responsibilities that come with the advantages of Delaware law.  *See Cole*, 562 F. Supp. at 179, 180-81 ("Since [surviving corporation] could have availed itself of the benefits of the forum in order to sue for monies owed its corporate predecessor, it seems only fair that [surviving corporation], deriving benefits from the forum, should also be expected to answer for liabilities incurred by the alleged negligent actions of its predecessor.").  GeoTag-Delaware created the controversy of this case by pursuing its lawsuit business, and GeoTag-Texas should be required to answer for it in GeoTag-Delaware's home state of Delaware.  Having taken advantage of the benefits of Delaware, GeoTag-Texas "has a corresponding duty to answer for

liabilities." *Cole*, 562 F. Supp. at 181.   The Court has general personal jurisdiction over GeoTag-Texas to adjudicate the disputes GeoTag-Delaware created.

> **2.     GeoTag's Incorporation in Delaware Was a Transaction of Business Giving This Court Specific Personal Jurisdiction**

Even if this Court were to conclude it does not have general personal jurisdiction over GeoTag based on Delaware's status as GeoTag's home state when it filed the Texas lawsuits, the Court still has personal jurisdiction pursuant to Delaware's long-arm statute.   Delaware's long-arm statute, 10 Del. C. § 3104(c), provides for jurisdiction over a party when the party "[t]ransacts any business or performs any character of work or service in the State."   Contrary to GeoTag's argument (Br. at 5) that the long-arm statute provides no basis for service upon GeoTag, the act of incorporating in Delaware clearly satisfies Section 3104(c).

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process."   *Avocent*, 552 F.3d at 1329. Often, a state's long-arm statute permits service of process as broad as due process will allow, and the "jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with due process."   *Id.*   Even though Delaware is a state where the long-arm statue permits service as broadly as allowed by due process, "the jurisdictional analysis must not be collapsed into a single constitutional inquiry" and "personal jurisdiction over a defendant is only proper if it meets the requirements of Delaware's long-arm statute and, separately, comports with due process."   *Boston Sci. Corp. v. Wall Cardiovascular Techs., LLC*, 647 F. Supp.2d 358, 364 (D. Del. 2009).   In particular, "[f]or the court to exercise specific personal jurisdiction consistent with due process, plaintiff's cause of action must have arisen from the defendant's activities in the forum state."   *Id.* at 365.   Both inquiries are satisfied here.

First, GeoTag-Delaware's incorporation in Delaware satisfies Delaware's long-arm statute. "Section 3104 is a 'single act' statute such that one act may be enough to constitute 'transacting business' under § 3104." *Arnold v. Society for Savings Bancorp, Inc.*, 1993 Del. Ch. LEXIS 275, *8 (Del. Ch. Dec. 15, 1993). GeoTag admits that it reincorporated Ubixo, Inc., in Delaware on July 16, 2010. "It is the single act of merging into a Delaware corporation and voluntarily opting not to reincorporate that entity in another state that constitutes a transaction of business within the meaning of § 3104." *Arnold,* 1993 Del. Ch. LEXIS 275 at *9. Thus, GeoTag's act of incorporating in Delaware constitutes "transacting business" under Section 3104(c). *Id.*

Second, due process is satisfied because GeoTag's incorporation in Delaware for the purpose of filing patent lawsuits was related to the cause of action in this case. While it was a Delaware corporation, receiving the benefits of Delaware law, GeoTag-Delaware sued Oracle's customers, creating a controversy between Oracle and GeoTag that is the subject of this lawsuit. *See* Decl. ¶¶ 7, 9. GeoTag's incorporation in Delaware for the purpose of bringing the infringement lawsuits that have caused injury to Oracle was a transaction of business, in Delaware, related to this cause of action. This is sufficient to satisfy due process and establish personal jurisdiction in Delaware. *See Arnold,* 1993 Del. Ch. LEXIS 275 at *8-*9.

GeoTag's citation to *Avocent* does not contradict this. In *Avocent*, the Federal Circuit ruled that an Alabama court did not have personal jurisdiction over a Taiwanese declaratory judgment defendant merely because the defendant sent letters threatening litigation to the Alabama plaintiff. *See Avocent,* 552 F.3d at 1333-34. According to the Federal Circuit, in declaratory judgment cases, where "the nature of the claim in a declaratory judgment action is 'to clear the air of infringement charges,'" the cause of action "arises out of or relates to the activities of the

defendant patentee in enforcing the patent or patents in suit" and thus "[t]he relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities." *Id.* at 1332. Merely sending threatening letters is not sufficient.  Rather, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit." *Id.* at 1333.  Specifically, the Federal Circuit has "consistently required the defendant to have engaged in 'other activities' that relate to the enforcement or the defense of the validity of the relevant patents." *Id.* at 1334.  GeoTag has engaged in other activities relating to the enforcement of its patent, including by incorporating in Delaware and proceeding to sue Oracle's customers, several of which are Delaware corporations.

Citing to *Juniper Networks, Inc. v. SSL Services LLC,* and *Western Digital Technologies, Inc. v. Board of Regents of the University of Texas System*[5] (Exs. B and C to GeoTag's Brief), GeoTag argues that filing lawsuits in Texas against Delaware corporations is insufficient to find personal jurisdiction in Delaware.  In *Juniper*, a California court dismissed a declaratory judgment action against a Maryland patent holding company which had previously sued an unrelated California company in Texas.  According to the *Juniper* court, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Ex. B at

---

[5]     *Western Digital*, GeoTag's only support for its argument that "patent enforcement litigation initiated by a patentee is directed exclusively at the forum in which such lawsuits are filed," GeoTag Br. at 9, explicitly stated that "it does not reach the personal jurisdiction . . . arguments . . . ," and thus is irrelevant to this Court's analysis.  GeoTag Br. Ex. C at n.3 and n.6.

4, quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  The act of filing a Texas lawsuit against an unrelated California defendant "[did] not qualify as the type of 'other activities' within the meaning of *Avocent*."  *Juniper*, GeoTag Br. Ex. B at 4.

GeoTag's argument misses the point.  GeoTag did not just file lawsuits against Delaware corporations in Texas.  Rather, it used Delaware law to set up a corporate structure for the purpose of bringing patent lawsuits.  Oracle's lawsuit is based on the harm caused by the Texas lawsuits that GeoTag was set up to bring.  The act of forming a corporation for filing lawsuits is an "other activity" directed at Delaware related to the cause of action.  In other words, setting up a corporate structure with the sole purpose of enforcing a patent "relates to the enforcement of . . . the relevant patent[]," *Avocent*, 552 F.3d at 1334.  It is an instance in which GeoTag "purposeful[ly] avail[ed] itself of the privilege of conducting activities within" Delaware and relied on "the benefits and protections of [Delaware's] laws" to establish its patent lawsuit business.  *Juniper*, Ex. B at 4.  GeoTag's Delaware incorporation, then, was a "single act" constituting "transacting any business" in Delaware satisfying both Section 3104 and due process.  *See Arnold*, 1993 Del. Ch. LEXIS 275 at *8-*9.

But that was not GeoTag's only Delaware act.  GeoTag argues that it terminated its incorporation in Delaware after being sued here by Google and Microsoft.  However, even after its strategic reincorporation in Texas, GeoTag proceeded to file counterclaims in Delaware to enforce its patent against Google and Microsoft.  *See* Ex. 3 (Counterclaims).  GeoTag's counterclaims explicitly state that they are not related to the lawsuits it brought in Texas.  *See Id.* at Counterclaims ¶ 18 (for Google); *see also id.* at Counterclaims ¶ 7 (for Microsoft) (allegations are "not based upon [Google's or Microsoft's] sale or distribution of any store locator services to any third party, including any other person who has been sued by GeoTag for infringement of the

14

'474 patent.").  The Federal Circuit has expressly observed that "initiat[ing] a suit seeking to enforce the same patent that is the subject of this suit against other parties, unrelated to this action, in the same district court" constitutes "other activity" related to the enforcement of the patent making personal jurisdiction fair under due process.  *Avocent,* 552 F.3d at 1335 (quoting *Viam Corp. v. Iowa Export-Import Trading Co*., 84 F.3d 424, 430 (Fed.Cir.1996)).  Pursuant to the business it set up when it was a Delaware corporation, GeoTag is currently enforcing its patent in Delaware, taking advantage of the procedures and protections of this Court.  GeoTag therefore could reasonably expect to be haled into Court in Delaware.

GeoTag has not presented any other "relevant factors" for the Court to consider.  Since Oracle has established sufficient Delaware contacts for personal jurisdiction, GeoTag was obligated to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable," *Avocent*, 552 F.3d at 1331, a standard it has not met.  In any event, the "relevant factors" courts consider are similar to those evaluated in a transfer analysis.  As explained below, considerations of convenience, efficiency, and justice do not favor transfer.  For similar reasons, they do not present a "compelling case" for defeating jurisdiction.

### 3.    If Necessary, Oracle Requests the Opportunity to Take Jurisdictional Discovery

The facts here establish that GeoTag is subject to personal jurisdiction in Delaware.  If the Court were to disagree, however, Oracle respectfully requests the opportunity to take jurisdictional discovery from GeoTag.  When considering a motion to dismiss for lack of personal jurisdiction, courts typically provide the plaintiff an opportunity to take jurisdictional discovery "unless the plaintiff's claim is 'clearly frivolous.'"  *Honeywell Int'l Inc. v. Apple Computer, Inc*., 2008 U.S. Dist. LEXIS 32857, at *8 (D. Del. 2008) (citing *Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)).  This threshold

15

requirement is satisfied here as the facts suggest "with reasonable particularity" the "possible existence of the requisite contacts" between GeoTag and Delaware.  *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005) (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3rd Cir. 1992)).

### C.   The Court Should Not Transfer the Case - Venue is Proper in Delaware

In the *Microsoft* case, GeoTag sought a transfer to the Eastern District of Texas, arguing that its various Texas actions were the first-filed cases and that Texas was more convenient.  *See Microsoft Corp. v. GeoTag Inc.*, 2012 WL 114128 (D. Del. Jan. 13, 2012).  This Court rejected those arguments, ruling that Microsoft and Google's lawsuit fell within the "customer-suit exception" to the "first-filed" rule, *see* 2012 WL 114128 at *5, and that transfer for convenience was not warranted, *see id.* at *2-*6.  GeoTag makes essentially the same motion here, advancing no new arguments as to why Oracle's case against GeoTag should be handled differently.  The Court should deny the motion to transfer for the same reasons that it denied GeoTag's motion to transfer the *Microsoft* case.

### 1.   The Case Should Not be Transferred Under the First-Filed Rule

Under the "customer suit" exception, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).  As this court has explained:

> [A]n exception to [the first-filed] rule controls the present inquiry.  Under Federal Circuit precedent, a manufacturer's declaratory judgment suit should be given preference over a patentee's suit against the manufacturer's customers when those customers are being sued for their ordinary use of the manufacturer's products.  This rule, known as the "customer suit exception," recognizes that it is more efficient for the dispute to be settled directly between the parties in interest.

*Ricoh Co., Ltd. V. Aeroflex Inc.,* 279 F. Supp. 2d 554, 557 (D. Del. 2003).

16

In the *Microsoft v. GeoTag* case, which involved the same Texas lawsuits as the instant suit, this Court determined that "the real dispute here is between GeoTag and the companies that provide the mapping services, and not between GeoTag and the customers of the companies that provide the mapping services." 2012 WL 114128 at * 5. The Court held that Microsoft and Google had "exactly the sort of manufacturers' interest as described in *Lear Siegler*," and that "this litigation does fall within the customer suit exception." 2012 WL 114128 at * 5. The same is true with GeoTag and Oracle. The real dispute is between GeoTag and Oracle, which provides the job search database products accused in Texas, not between GeoTag and Oracle's customers, who merely use the job search database products provided by Oracle.

Oracle is situated exactly like Microsoft and Google. In Texas, GeoTag has sued several of Oracle's customers, alleging infringement of the '474 patent. *See* Decl. at ¶¶ 7, 9. But it has not sued Oracle (or Taleo). *See* Decl. at ¶ 20. Even after Taleo sought to intervene in the *Microsoft* case, and after Taleo filed the complaint in this action, GeoTag did not amend its complaints in Texas to add Oracle[6]. GeoTag has made a deliberate decision to proceed in Texas against Oracle's customers without naming Oracle or Taleo. However, as explained in its motion to intervene in the *Microsoft* case (1:11-cv-00175-RGA D.I.52 at 6-8 and 14-15 and D.I. 79 at 6-8), Taleo (now Oracle) designed, implemented, and in most cases actually hosts on its servers the job search database features accused by GeoTag in Texas. *See also* Decl. ¶¶ 4, 5, 21.

---

[6]    In contrast, after Where 2 Get It filed its declaratory judgment action in Delaware against GeoTag, GeoTag promptly filed a suit against Where 2 Get It in Texas. This created a "race to the courthouse" scenario. It was this distinction, the "zinger, if you will, the added factor," GeoTag argued, that made transfer appropriate in *Where 2 Get It* when it was not appropriate in *Microsoft*. Ex. 5, *W2GI*, Mar. 6, 2012, Tr. at 42. The Court transferred Where 2 Get It's Delaware action to Texas, reasoning that the "race to the courthouse" was "a significant difference between [the *Where 2 Get It*] case and Google and Microsoft versus Geotag case . . . ." *Id.* at 81-82. There is no such "zinger" in this case. GeoTag has not sued Oracle in Texas. Oracle is on the same footing as Google and Microsoft.

Oracle's customers are seeking indemnity from Oracle for GeoTag's allegations.  *See* Decl. ¶¶ 9-

14.  Like Microsoft and Google, Oracle is the real party in interest in the dispute between

GeoTag and Oracle's customers.   Oracle's customers are "peripheral" and "have nothing

substantive to offer" in defending against GeoTag's allegations of infringement, and "likely do

not even understand how the product software actually works and will not be helpful to

determine" whether Oracle's products actually infringe the '474 patent.   *Spread Spectrum*

*Screening, LLC v. Eastman Kodak Co.*, 2010 U.S. Dist. LEXIS 90549, *8 (N.D. Ill. Sept. 1,

2010) (staying the lawsuit as to Kodak's customers and transferring the case against Kodak to

Kodak's home forum).  Thus, the customer suit exception applies to this case.

GeoTag's cases are inapplicable.  For example, in *Horton Archery v. American Hunting*

*Innovations, LLC,* 2010 WL 395572 (N.D. Ohio, Jan. 27, 2010)[7], the declaratory judgment

defendant had amended its complaint in a different forum to add the declaratory judgment

plaintiff.  The question was whether that amendment could relate back to the original filing,

which predated the declaratory judgment action.  *See id.* at *3.  *See also Shire U.S., Inc. v.*

*Johnson Matthey, Inc.*, 543 F. Supp.2d 404, 407-408 (E.D. Penn. 2008); *Advanta Corp. v. Visa*

*U.S.A., Inc.*, 1997 WL 88906, *1 (E.D. Penn., Feb. 19, 1997).  GeoTag has made a strategic

decision not to sue Oracle in Texas.  Thus, there is no amended complaint to relate back to an

original Texas filing predating this lawsuit.

Moreover, according to GeoTag's case law, the first-filed rule "provides that when

actions involving nearly identical parties and issues have been filed in two different district

---

[7]     *Horton* specifically states that the first-filed rule is subject to the "customer-suit
        exception" where "a later-filed manufacturer declaratory suit takes priority over earlier-
        filed infringement suits against the manufacturer's customers."  2010 WL 395572 at *6.
        Thus, GeoTag has no argument that the cases it cites somehow change the Court's
        analysis from that in *Microsoft*.

courts, the court in which the first suit was filed should generally proceed to judgment." *Horton,* 2010 WL 395572 at *2 (internal quotation marks omitted).  Oracle is not nearly identical to its customers.[8]  *Shire* provides a slightly different rule, stating that the "'subject matter' requirement of the first-to-file rule is satisfied in patent infringement matters where the actions in question involve the same patent and the same allegedly infringing product, though not necessarily the same parties."  543 F. Supp.2d at 404.  Either way, the issues Oracle seeks to resolve here are not "the same" or "nearly identical" to the issues in the Texas cases.  In Delaware, Oracle is seeking a complete resolution of the disputes between it and GeoTag.   In Texas only the particular products used by the accused customers will be addressed, rather than all of Oracle's products. Moreover, in the *Microsoft* case, GeoTag accused a multitude of Google and Microsoft products that had nothing to do with the Texas actions.   It is doubtful that GeoTag will limit its accusations in Delaware to just those Oracle products it accused in Texas.  The subject matter of this case and the Texas actions, while overlapping, is not "the same" or "nearly identical." Accordingly, the first-filed ruled does not apply.  *See G&G LLC v. Verdi White, III,* 535 F. Supp. 2d 452, 466 (D. Del. 2008) (finding dismissal inappropriate where it was unclear whether the plaintiff could fully litigate all its claims in the other suit).

### 2.     The Private and Public Interest Factors Do Not Favor Transfer

This Court denied GeoTag's motion to transfer the *Microsoft* case to Texas because GeoTag could not establish that it was more convenient.  The analysis in this case is nearly identical, and the result should be the same – denial of GeoTag's motion.  Oracle, a Delaware company (as was Taleo), chose Delaware as the forum, which "weighs strongly in the

---

[8]     In *Horton*, the counterclaim plaintiff, Horton Archery, LLC, had purchased the assets of, and thus was nearly identical to Horton Manufacturing, the defendant in the first-filed case.  *See* 2010 WL 395572 at *1.

plaintiff['s] favor, although not as strongly as it would if the plaintiff[] has [its] principal place[] of business" in Delaware. *Microsoft*, 2010 WL 114128 at \*2. While the Court would not characterize GeoTag's connections with Texas as a "sham," it did note that "its claim on the Marshall Division of the Eastern District is clearly not for the convenience of any party, lawyer, or witness," and that "[t]he lack of a substantial connection to the Eastern District is taken into account in the balancing of the other factors, and, in particular, by not according Geotag's preference for the Eastern District the same weight as it might otherwise deserve." *Id.* at \*5. The Court determined that the remaining factors "do not add much to the balancing . . . ." *Id.* at \*2. None of that has changed. While GeoTag has reincorporated in Texas, GeoTag admits that it did so "to avoid being sued again in Delaware regarding the '474 patent" rather than for any reasons of convenience. Br. at 8

Indeed, GeoTag does not attempt to argue any of the convenience factors addressed by the Court in *Microsoft*. Instead, GeoTag simply rehashes its "first-filed" argument and suggests that having a single judge handle both disputes would be more convenient. *See* Br. at 11-12. However, in *Microsoft*, this Court rejected that argument as well, noting that "the 'interest of justice' supports management and resolution of all the Geotag cases by one judge, but it does not really provide an answer to the question whether it should be a Texas or a Delaware judge." 2010 WL 114128 at \*6. GeoTag was unable to put forth convincing reasons to transfer the *Microsoft* case and has added nothing to its analysis in this motion. Therefore, the Court should also deny GeoTag's motion to transfer Oracle's case.

## VI.   CONCLUSION

For the foregoing reasons, the Court should deny GeoTag's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*
_____
Thomas C. Grimm (#1098)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
*Attorneys for Plaintiff*

OF COUNSEL:

Jason C. Kravitz
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000

David C. McKone
NIXON PEABODY LLP
300 S. Riverside Plaza
16th Floor
Chicago, IL 60606
(312) 425-3900

July 9, 2012
6044192

21