# EXHIBIT 1

As filed with the Securities and Exchange Commission on January 4, 2011

Registration No. 333-170565

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

## Amendment No. 1
## to
## FORM S-1
## REGISTRATION STATEMENT
### *UNDER THE SECURITIES ACT OF 1933*

# GEOTAG INC.
#### (Exact Name Of Issuer in Its Charter)

| Delaware | 7370 | 27-3072934 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation or Organization) | (Primary Standard Industrial Classification Number) | (I.R.S. Employer Identification No.) |

**Antony Norris, President**
**GEOTAG INC.**
**555 Republic Drive**
**Suite 200**
**Plano, Texas 75074**
**(972) 422-9129**
#### (Address and Telephone Number of Principal Executive Offices)

**Antony Norris, President**
**GEOTAG INC.**
**555 Republic Drive**
**Suite 200**
**Plano, Texas 75074**
**(972) 422-9129**
#### (Name, Address and Telephone Number of Agent for Service)

*Copies of all communications to:*

**Michael A. Hedge**
**Joshua A. Lane**
**K&L Gates LLP**
**1900 Main Street, Suite 600**
**Irvine, California 92614**
**(949) 253-0900**

**Lynne Bolduc**
**Bruce Lee**
**Oswald & Yap LLP**
**16148 Sand Canyon Ave.**
**Irvine, California 92618**
**(949) 788-8900**

**Approximate date of commencement of proposed sale to the public**: As soon as practicable after this Registration Statement becomes effective

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, check the following box. ☒

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☐ |
| Non-accelerated filer | ☒ (Do not check if a smaller reporting company) | Smaller reporting company | ☐ |

## CALCULATION OF REGISTRATION FEE

| Title of Each Class of Securities to be Registered | Amount to be Registered | Proposed Maximum Offering Price Per Security | Proposed Maximum Aggregate Offering Price | Amount of Registration Fee |
|---|---|---|---|---|
| Common stock, par value $0.01 per share (1) | 575,000 | $6.25 | $ 3,593,750(4) | $ 417.23 |
| Common stock, par value $0.01 per share (2) | 20,913,126 | $6.25 | $130,707,037.50(4) | $15,175.09 |
| Underwriter's warrant to purchase common stock (3) | 28,750 | | | — (5) |
| Shares of common stock issuable upon exercise of the underwriter's warrant | 28,750 | $7.50 | $ 215,625(6) | $ 25.03 |
| Total | | | $134,516,412.50 | $15,617.36(7) |

Table of Contents

## PROSPECTUS SUMMARY

*This summary highlights certain information contained elsewhere in this prospectus. This summary does not contain all of the information you should consider before investing in our common stock. You should carefully read the entire prospectus, including "Risk Factors" and our financial statements and related notes, before you decide whether to invest in our common stock. Investing in our common stock involves risks. See "Risk Factors." All dollar amounts referred to in this prospectus are in U.S. dollars unless otherwise indicated. Any discrepancies in the tables included herein between the amounts listed and the totals thereof are due to rounding.*

*Unless otherwise indicated or unless the context otherwise requires, all references in this document to "we," "us," "our," the "Company" and similar expressions are references to GEOTAG INC.*

### Our Business

We are a geo-location technology provider with headquarters in Plano, Texas. Our technology is based on fundamental technology described in U.S. Patent Number 5,930,474, which we own and refer to in this prospectus as the 474 Patent, entitled "Internet Organizer for Accessing Geographically and Topically Based Information." This location-based technology, which we refer to in this prospectus as the GEOTAG Technology, is a spatial information management technology that makes possible a range of location-enabled online applications, and can be used by third-party, location-based applications and geography-reliant systems and infrastructures. Companies providing these online applications will be able to license the GEOTAG Technology from us in order to interactively and dynamically retrieve data from a database and associate retrieved data with a location. GEOTAG Technology, in brief, makes effective and efficient online geographic differentiation possible.

We believe that geographic information is pervasive in today's information-centric environment and that the prevalence of business systems designed to exploit geography suggests the importance of spatial information management. The determination of location is, in our opinion, a fundamental requirement in many online activities, and is an increasingly attractive feature for a variety of recreational and business applications. Furthermore, determination of location is a common dimension of almost all business information and an important element for many business decisions. Integrating location into applications enables organizations to make better decisions, respond to customers more effectively, and reduce costs. For consumers, geographically served information is more useful, easier to access and timelier to act on. We believe that the more targeted data and information is the more relevant it is, and, in turn, it can be used more efficiently and cost effectively than broadly organized data and information.

The patent application based on this technology was filed with the United States Patent and Trademark Office, or USPTO, on January 31, 1996, and the 474 Patent was subsequently issued on July 27, 1999. The GEOTAG business, including the 474 Patent and the GEOTAG trademark, was purchased by Ubixo Limited (formerly known as M2 Global Ltd.), an Antigua company and leading provider of software for electronic payment, in February 2009. In this prospectus, we refer to Ubixo Limited from time to time as "Ubixo."

### Spin-Off from Ubixo Limited and Purchase of the 474 Patent

On July 1, 2010, we were formed as a subsidiary of Ubixo. On July 12, 2010, we were spun off from Ubixo as a stand-alone, independent operating entity. The GEOTAG business was a non-core business for Ubixo, and thus Ubixo spun us off primarily to allow Ubixo management to focus on its core business lines, while giving us, as a separated entity, the ability to devote the attention necessary to maximize the value of the GEOTAG business for our stockholders. In connection with the spin-off, Ubixo transferred the GEOTAG business, including the 474 Patent and GEOTAG trademark, to us in exchange for our assumption of certain Ubixo

**Table of Contents**

indebtedness and 132,756,448 shares of our common stock, which Ubixo subsequently distributed pro-rata to the shareholders of Ubixo as a dividend. Each shareholder of Ubixo received two of our shares for each share that they held in Ubixo. Ubixo had not generated any revenues from the 474 Patent prior to the spin-off.

**Industry and Market Opportunity**

We believe there are a number of licensing opportunities in the so called online yellow pages industry for our 474 Patent. Online yellow pages, also referred to as internet yellow pages, are online versions of traditional printed directories that offer listings based on a geographic area. A subset of the online yellow pages is known as a local search directory which provides content with the added ability to refine the search to find the needed service. Local search directories prioritize local businesses in its results rather than the results being dominated by regional or national companies. Certain providers of internet yellow pages offer online advertising.

With more and more geographic data coming online through companies, organizations and consumers, we believe there is an increasing need for geographic data management. We also believe that the demand for online geo-location information will continue to grow. Simba Information, a media industry forecast and analysis firm, reports that internet yellow pages spending increased 17.4% to $1.83 billion in 2009, accounting for 11.1% of total yellow pages market revenue (see Press Release, Simba Information, "Online Yellow Pages Markets 2009-2010," December 4, 2009). Simba Information also projects that internet yellow pages revenue will increase to $3.06 billion by 2012, accounting for 20.1% of the total yellow pages market (see Press Release, Simba Information, "Online Ad Sales Capture 20.1% of Yellow Pages Market by 2012," October 26, 2010). In addition, BIA/Kelsey, which advises companies in the local media space, forecasts that spending on local online media in the U.S. will grow from $15.2 billion in 2010 to $36.7 billion in 2014, representing a compound annual growth rate of 19.3% over the next four years (see Press Release, BIA/Kelsey, "BIA/Kelsey Forecasts U.S. Local Advertising Revenues to Reach $144.9B in 2014," February 22, 2010). In addition to its potential growth, the local online ad market can also generate higher than average margins. BIA/Kelsey's research indicates that advertisers are willing to pay a premium for local online ads, anywhere from 20% to 100%, depending on the geography and vertical (see Online Article, eMarketer.com, "Low Growth, High Value for Local Online Ads," October 20, 2009).

In addition to licensing opportunities in the online yellow pages industry, we are also focused on licensing opportunities with companies whose websites contain a geography-specific locator function (also known as a product locator, dealer locator or store locator). The companies whose websites utilize this function span a variety of industrial sectors. This function allows visitors of a company's website to conveniently find the closest location at which they can buy the company's particular products or services. The locator function may be found on the websites of manufacturers, wholesalers, retailers, and service providers.

While the focus of our patent enforcement and licensing strategy is currently on companies operating in the online yellow pages industry and companies whose websites contain a geography specific locator function, we expect that, with location-based information management capabilities commercially viable in a wide range of products and services, the market for our patented technology will expand into new industries. We are currently performing research to define these industries. Our goal is to take advantage of what we see as a trend towards geographically relevant information management and to expand our licensing business into potentially high-growth markets. Our objective is to be a leader in location-based services and information technology by actively developing and promoting license relationships in geo-location information technology market verticals.

**Our Strategy and Patent Licensing Business Model**

By virtue of our ownership of the 474 Patent, we consider ourselves an early entrant and leader in the development and commercialization of location-based technology. We intend to vigorously protect our patented

Table of Contents

technology against unauthorized use and third-party infringers. We expect to execute patent licensing arrangements with users of the GEOTAG Technology through either willing licensing negotiations without the filing of patent infringement litigation, or, if necessary, through the negotiation of license and settlement arrangements in connection with the filing of patent infringement litigation.

We believe there are opportunities for generating revenues from our negotiation of license and settlement arrangements with unauthorized users of our technology. The 474 Patent will expire on January 31, 2016. At that time, the technology disclosed in the 474 Patent will enter the public domain, our rights of exclusion related to the 474 Patent will expire, and our ability to generate revenue from licensing arrangements with respect to the 474 patented technology will cease.

**Risks Associated with Our Business**

Our business is subject to numerous risks. Please see the "Risk Factors" section beginning on page 6 of this prospectus.

**Corporate Information**

On July 1, 2010, we were formed under the name of Ubixo Inc. as a British Virgin Islands subsidiary of Ubixo Limited. In connection with our spin-off from Ubixo Limited, we re-incorporated as a Delaware company on July 16, 2010 and changed our name to GEOTAG INC. We currently have no subsidiaries.

Our executive offices are located at 555 Republic Drive Suite 200, Plano, Texas 75074 and our telephone number is (972) 422-9129. The URL of our website is www.geotag.com. The information on, or that can be accessed through, our website is not incorporated by reference into this prospectus and should not be considered to be a part of this prospectus.

3

**Table of Contents**

# SUMMARY FINANCIAL DATA

The following table presents our summary financial data. We have derived our statements of operations data for the three months ended September 30, 2010 from our audited financial statements appearing elsewhere in this prospectus. Our audited financial information is prepared and presented in accordance with generally accepted accounting principles in the United States, or U.S. GAAP. Results for the three months ended September 30, 2010 are not necessarily indicative of the results of operations that may be expected for the full year. Our summary financial data should be read together with "Management's Discussion and Analysis of Financial Condition and Results of Operations" and our financial statements and related notes included elsewhere in this prospectus.

| | During the period from inception, July 1, 2010, through September 30, 2010 |
|---|---|
| **Statement of Operations Data:** | |
| Revenues | $ — |
| Cost of goods sold | — |
| Gross margin | — |
| Operating expenses: | |
| Selling, general and administrative | 136,272 |
| Amortization expense | 3,760,758 |
| Total operating expenses | 3,897,030 |
| Loss from operations | (3,897,030) |
| Interest expense | (299,071) |
| Loss before provision for income taxes | (4,196,101) |
| Provision for income taxes | — |
| Net loss | $ (4,196,101) |
| Basic and diluted net loss per common share | $ (0.04) |
| Weighted average common shares outstanding | 119,525,000 |

| | As of September 30, 2010 | |
|---|---|---|
| | Actual | As Adjusted (1) |
| **Balance Sheet Data:** | | |
| Cash and cash equivalents | $    66,045 | $  2,578,601 |
| Patent, net | 91,621,468 | 91,621,468 |
| Total assets | $91,753,906 | $ 94,266,462 |
| Current liabilities | $   142,563 | $     142,563 |
| Notes payable and accrued interest | 30,166,927 | 30,166,927 |
| Total liabilities | $30,309,490 | $ 30,309,490 |
| Total stockholders' equity | $61,444,416 | $ 63,956,972 |
| Total liabilities and stockholders' equity | $91,753,906 | $ 94,266,462 |

(1)    The as adjusted column gives effect to the sale of 500,000 shares of our common stock in this offering based on an initial public offering price of $6.25 per share after deducting estimated underwriting discounts and commissions and offering costs payable by us.

Table of Contents

## RISK FACTORS

*Investing in our common stock involves a high degree of risk. You should carefully consider the following risk factors, as well as the other information in this prospectus, before deciding whether to invest in shares of our common stock. If any of the following risks actually occur, our business, financial condition, operating results and prospects would suffer. In that case, the trading price of our common stock would likely decline and you might lose all or part of your investment in our common stock.*

### RISKS RELATED TO OUR BUSINESS

**Our business currently consists of a single technology and our success is dependent upon our ability to negotiate license and settlement arrangements with unauthorized users of our 474 patented technology.**

All of our revenue will be derived from our ability to negotiate and enforce settlement and licensing arrangements with unauthorized users of our 474 patented technology. Our ability to successfully negotiate license agreements with third-party users of our technology will depend, in large part, on our outside legal team's success in developing, operating and prosecuting our patent infringement and licensing strategy for the 474 Patent. If necessary, we may be required to file patent infringement actions against unauthorized, third-party users of our patented technology. The success of such actions will be based on a number of factors, including, but not limited to:

- the strength of the 474 Patent claims;

- the validity of the 474 Patent;

- persuasive evidence that the 474 Patent is being infringed by the alleged infringer;

- the extent to which new legislation, regulations or rules implemented by the U.S. Congress, the USPTO, or the courts impact the patent enforcement process;

- our compliance with statutory authority, regulatory authority, federal rules, local court rules, or governing standards relating to the substantive or procedural aspects of patent enforcement actions;

- the findings and decisions of judges and juries; and

- the length of time it takes to resolve an enforcement action.

In addition, our future success also depends upon the ability of our licensees to develop, introduce and deliver services that achieve and sustain market acceptance. We have little or no control over the sales efforts of our licensees, and our licensees might not be successful.

**If the 474 Patent were determined to be invalid, or when the 474 Patent expires, our ability to generate revenue would be substantially reduced and our business would be materially adversely affected.**

As of the date of this prospectus, we have a single material asset, namely the 474 Patent, from which we expect to generate substantially all of our revenue. If the 474 Patent were determined to be invalid, our ability to generate revenue would be substantially reduced and our business would be materially adversely affected. In addition, the 474 Patent will expire on January 31, 2016. At that time, the underlying technology will enter the public domain, our rights of exclusion will expire, and our ability to generate revenue from licensing arrangements with respect to the 474 patented technology will cease. If we fail to develop or acquire additional revenue sources, the invalidity or expiration of the 474 Patent will materially adversely affect us. See the risk factor under the caption "We may pursue strategic acquisitions, investments, strategic partnerships or other ventures, and our business could be materially harmed if we fail to successfully identify, complete and integrate such transactions" below.

6

**Table of Contents**

**Outlook and Plan of Operation for Our Business**

We began generating nominal revenues from the granting of licenses for the use of the GEOTAG Technology in the fourth quarter of 2010. We expect that as we continue to pursue our patent enforcement and licensing strategy, we will begin generating more substantial revenues as early as the first quarter of 2011.

We filed a complaint in July 2010 in the United States District Court for the Eastern District of Texas, Marshall Division, naming the first defendants in the online yellow pages industry that we believe are infringing on the GEOTAG Technology. The previous owners of the 474 Patent prior to Ubixo filed a similar complaint in 2008 in the Marshall Division against Idearc Media Services-West Inc. Idearc, since renamed SuperMedia LLC, operates a number of online directory websites including Superpages.com. The previous owners of the 474 Patent and Idearc settled their case in December 2008 and Idearc is now a licensee of the 474 Patent technology. The license granted to Idearc is a non-exclusive, irrevocable, fully-paid up and non-sublicensable license in the designated field. By virtue of several assignments of the settlement agreement, the last being made by Ubixo to us in connection with our spin-off from Ubixo, we have assumed this settlement agreement in its entirety. However, because the license is fully paid-up, we do not and will not receive any license fees from SuperMedia LLC.

In addition, in December 2010, we filed complaints in the United States District Court for the Eastern District of Texas, Marshall Division, naming certain defendants whose websites contain geography-specific locator functions that we believe are infringing on our GEOTAG Technology.

Over the next twelve months, we expect to continue pursuing patent licensing arrangements with unauthorized users of our patented technology in the online yellow pages industry and unauthorized users with locator functions on their websites, either through willing licensing negotiations without the filing of patent infringement litigation, or through the negotiation of license and settlement arrangements in connection with the filing of patent infringement litigation. Much of the work involved in performing this activity will be performed by our Licensing and Enforcement Counsel, as described further below.

In addition, we will continue researching and analyzing new industries, businesses and website functions that may require a license to our patented technology. While we expect that we will be able to adequately perform these research and analysis functions with our existing personnel, the assistance of additional research personnel will help us perform these functions more comprehensively and expeditiously. Therefore, we expect to pursue the recruitment of qualified personnel to join our research and analysis team over the next twelve months. If we are successful in our attempt to recruit and hire additional research and analysis staff, we believe that we will be able to identify potential licensees earlier and therefore receive licensing and settlement fees more quickly.

We have retained the services of several law firms to develop, operate and prosecute our patent licensing and enforcement strategy for the 474 Patent. These law firms will receive fees on a contingency basis, meaning we will pay them a success fee only if and when cases are settled successfully. Payments to these firms will be made under the licensing agreements executed as part of the settled cases. We believe our profit margin should increase as we increase the number of licensees under the 474 Patent, as most of our costs are fixed. The nature of the business is such that a majority of our costs will be the contingent lawyers' fees and various related out-of-pocket legal expenses. Our ability to increase the revenue will also depend, in part, on our ability to negotiate, in those instances when we are required to litigate a 474 Patent license, successful settlements in an expeditious manner.

We anticipate that our operating overhead will be relatively low, with most of the cost of our 474 Patent-licensing program being borne by our contingency lawyers. Enforcing patent rights can be a very expensive undertaking particularly when suing the first defendant or defendants. In our case, the first 474 Patent infringement lawsuit has already been settled. Accordingly, we may be able to reuse certain aspects of the case work, including technical and damages analysis that went into the first lawsuit. We also anticipate that the effort and cost that went into construing claims with the Idearc case will significantly reduce the cost of construing claims in future enforcement actions. The fact that the 474 Patent has already been through a so-called "Markman" hearing in the Eastern District is a particularly significant milestone. A Markman hearing, also called

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

GEOTAG, INC.

     PLAINTIFF,

  v.

GUCCI AMERICA, INC.;
BANANA REPUBLIC (APPAREL), LLC;
BANANA REPUBLIC (ITM), INC.;
BANANA REPUBLIC, LLC;
BARNES & NOBLE, INC;
BARNESANDNOBLE.COM, LLC;
BASS PRO, INC.;
BASS PRO SHOPS, INC.;
BPS DIRECT, LLC;
BASS PRO OUTDOORS ONLINE, LLC;
BIG LOTS, INC.;
BIG LOTS STORES, INC.;
BJ'S WHOLESALE CLUB, INC;
CABELA'S, INC.;
CHANEL, INC.;
CHANEL USA, INC.;
TRADEMARK SERVICES, LTD.;
COACH, INC.;
COSTCO WHOLESALE CORP.;
DILLARD'S, INC.;
GAP, INC.;
GAP (APPAREL) LLC;
GEORGIO ARMANI CORP. D/B/A GEORGIO
ARMANI D/B/A ARMANI;
GORDON JEWELRY CORP. D/B/A
GORDON'S JEWELERS;
ZALE CORP. D/B/A ZALE'S D/B/A ZALES
JEWELERS D/B/A GORDON'S JEWELERS
D/B/A PIERCING PAGODA;
HERMAN MILLER, INC.;
HOBBY LOBBY STORES, INC. D/B/A
HOBBY LOBBY CREATIVE CENTERS
D/B/A HOBBY LOBBY;
LEO'S DANCEWEAR, INC.;
LESLIE'S POOLMART, INC. D/B/A
LESLIE'S POOLMART D/B/A LESLIE'S

CIVIL ACTION NO. _____

SWIMMING POOL SUPPLIES D/B/A
LESLIE'S;
MACY'S, INC.;
NIKE, INC.;
PETCO ANIMAL SUPPLIES, INC.;
RALPH LAUREN MEDIA, LLC;
POLO RALPH LAUREN CORP.;
ROSS STORES, INC.;
SKECHERS USA, INC.;
THE SPORTS AUTHORITY, INC.;
STAPLES, INC.;
TA OPERATING LLC D/B/A
TRAVELCENTERS OF AMERICA;
TIFFANY & CO. D/B/A TIFFANY AND
COMPANY;
VERA WANG BRIDAL HOUSE, LTD.;
V.E.W., LTD.; AND
WOOLRICH, INC.

DEFENDANTS. | JURY TRIAL DEMANDED

## **COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff GEOTAG, INC. files this Complaint against GUCCI AMERICA, INC.;
BANANA REPUBLIC (APPAREL), LLC; BANANA REPUBLIC (ITM), INC.; BANANA
REPUBLIC, LLC; BARNES & NOBLE, INC; BARNESANDNOBLE.COM, LLC; BASS PRO,
INC.; BASS PRO SHOPS, INC.; BPS DIRECT, LLC; BASS PRO OUTDOORS ONLINE,
LLC; BIG LOTS, INC.; BIG LOTS STORES, INC.; BJ'S WHOLESALE CLUB, INC;
CABELA'S, INC.; CHANEL, INC.; CHANEL USA, INC.; TRADEMARK SERVICES, LTD.;
COACH, INC.; COSTCO WHOLESALE CORP.; DILLARD'S, INC.; GAP, INC.; GAP
(APPAREL) LLC; GEORGIO ARMANI CORP. D/B/A GEORGIO ARMANI D/B/A
ARMANI; GORDON JEWELRY CORP. D/B/A GORDON'S JEWELERS; ZALE CORP.
D/B/A ZALE'S D/B/A ZALES JEWELERS D/B/A GORDON'S JEWELERS D/B/A
PIERCING PAGODA; HERMAN MILLER, INC.; HOBBY LOBBY STORES, INC. D/B/A

47.     Further, venue of this action is appropriate and convenient because this Court previously heard a parallel action for infringement of the same '474 patent in *Geomas (International), Ltd., et al. vs. Idearc Media Services-West, Inc., et al.,* Civil Action No. 2:06-CV-00475-CE ("the Geomas Lawsuit"). In the Geomas Lawsuit this Court considered and construed the terms and claims of the '474 patent, as set forth in the Court's Memorandum Opinion and Order issued on November 20, 2008.

**COUNT I**

**INFRINGEMENT OF U.S. PATENT NO. 5,930,474**

48.     United States Patent No. 5,930,474 (the "'474 patent"), entitled "Internet Organizer for Accessing Geographically and Topically Based Information," duly and legally issued on July 29, 1999.

49.     GEOTAG is the assignee of the '474 Patent and it has standing to bring this lawsuit for infringement of the '474 Patent.

50.     The claims of the '474 Patent cover, *inter alia,* systems and methods which comprise associating on-line information with geographic areas, such systems and methods comprising computers, an organizer, and a search engine configured to provide a geographical search area wherein at least one entry associated with a broader geographical area is dynamically replicated into at least one narrower geographical area, the search engine further configured to search topics within the selected geographical search area.

51.     On information and belief, all Defendants named herein have infringed the '474 patent pursuant to 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line

information with geographic areas and which are covered by one or more claims of the '474 patent.

52.     On information and belief, GUCCI has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On information and belief, such systems and methods comprise the Store Finder at www.gucci.com.

53.     On information and belief, BARNES & NOBLE has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.  On information and belief, such systems and methods comprise the Find A Store/Find an Event at www.barnesandnoble.com.

54.     On information and belief, BASS PRO SHOPS has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On information and belief, such systems and methods comprise the Store Finder at www.basspro.com.

55.     On information and belief, BIG LOTS has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On

information and belief, such systems and methods comprise the Find A Big Lots Store Near You at www.biglots.com.

56.     On information and belief, BJ'S has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On information and belief, such systems and methods comprise the Store Finder at www.bjs.com.

57.     On information and belief, CABELA'S has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On information and belief, such systems and methods comprise the Store Finder at www.cabelas.com.

58.     On information and belief, CHANEL has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On information and belief, such systems and methods comprise the Store Locator at www.chanel.com, including www.chanel.com/en_US.

59.     On information and belief, COACH has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On

information and belief, such systems and methods comprise the Store Locator at www.coach.com.

60.     On information and belief, COSTCO has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On information and belief, such systems and methods comprise the Find A Costco Warehouse at www.costco.com.

61.     On information and belief, DILLARD'S has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On information and belief, such systems and methods comprise the Store Locator at www.dillards.com.

62.     On information and belief, GAP has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On information and belief, such systems and methods comprise the Store Locator at www.gap.com, www.bananarepublic.com.

63.     On information and belief, GEORGIA ARMANI has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line

information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Store Locator at www.armani.com and www.armanistores.com and www.emporioarmani.com.

64. On information and belief, GORDON'S has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Store Locator at www.gordonsjewelers.com.

65. On information and belief, HERMAN MILLER has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Global Dealer Locator at www.hermanmiller.com.

66. On information and belief, HOBBY LOBBY has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Store Finder at www.hobbylobby.com.

67. On information and belief, LEO'S DANCEWEAR has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or

offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Dealer Locator at www.leosdancewear.com.

68.     On information and belief, LESLIE'S has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Store Locator at www.lesliespool.com.

69.     On information and belief, MACY'S has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Store Locator at www.macys.com.

70.     On information and belief, NIKE has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Nike Store And Event Locator at www.nike.com.

71.     On information and belief, PETCO has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On information and belief, such systems and methods comprise the Store Locator at www.petco.com.

72.     On information and belief, RALPH LAUREN has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On information and belief, such systems and methods comprise the Store Finder at www.ralphlauren.com.

73.     On information and belief, ROSS has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On information and belief, such systems and methods comprise the Store Locator at www.rossstores.com.

74.     On information and belief, SKECHERS has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent.   On

information and belief, such systems and methods comprise the Store Locator at www.skechers.com.

75. On information and belief, SPORTS AUTHORITY has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Store Locator at www.sportsauthority.com.

76. On information and belief, STAPLES has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Store Locator and Check Availability at www.staples.com.

77. On information and belief, TRAVELCENTERS has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Location Search and Advanced Location Search at www.tatravelcenters.com.

78. On information and belief, TIFFANY has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with

geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Store and Event Finder at www.tiffany.com.

79.     On information and belief, VERA WANG has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Store Locator at www.verawang.com.

80.     On information and belief, WOOLRICH has infringed the '474 patent in violation of 35 U.S.C. § 271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one or more claims of the '474 patent. On information and belief, such systems and methods comprise the Retail Store Finder at www.woolrich.com.

81.     To the extent that facts learned during the pendency of this case show that Defendants' infringement is, or has been willful, GEOTAG reserves the right to request such a finding at time of trial.

82.     As a result of Defendants' infringing conduct, Defendants have damaged GEOTAG. Defendants are liable to GEOTAG in an amount that adequately compensates GEOTAG for their infringement, which, by law, can be no less than a reasonable royalty.

## **PRAYER FOR RELIEF**

WHEREFORE, GEOTAG respectfully requests that this Court enter:

1.      A judgment in favor of GEOTAG that Defendants have infringed the '474 patent;

2.      A permanent injunction enjoining Defendants, and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the '474 patent;

3.      A judgment and order requiring Defendants to pay GEOTAG its damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '474 patent as provided under 35 U.S.C. § 284;

4.      An award to GEOTAG for enhanced damages as provided under 35 U.S.C. § 284;

5.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to GEOTAG its reasonable attorneys' fees; and

6.      Any and all other relief to which GEOTAG may show itself to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, GEOTAG requests a trial by jury of any issues so triable by right.


December 17, 2010                    Respectfully submitted,

                                     GEOTAG, INC.

                                     By: /s/ *John J. Edmonds*
                                     John J. Edmonds – Lead Counsel
                                     Texas Bar No. 789758
                                     Michael J. Collins
                                     Texas Bar No. 4614510
                                     Stephen F. Schlather
                                     Texas Bar No. 24007993
                                     COLLINS, EDMONDS & POGORZELSKI, PLLC
                                     1616 S. Voss Road, Suite 125
                                     Houston, Texas 77057
                                     Telephone: (281) 501-3425

Facsimile: (832) 415-2535
jedmonds@cepiplaw.com
mcollins@cepiplaw.com
sschlather@cepiplaw.com

L. Charles van Cleef
Texas Bar No. 786305
Van Cleef Law Office
500 N Second Street
Longview, Texas 75601
(903) 238-8244
(903) 248-8249 Facsimile
charles@vancleef.net

ATTORNEYS FOR PLAINTIFF
GEOTAG, INC.

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICROSOFT CORPORATION, and | ) | |
| GOOGLE INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-cv-175-RGA |
| | ) | |
| GEOTAG, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant and | ) | |
| Counterplaintiff. | ) | |

## DEFENDANT GEOTAG, INC.'S ANSWER AND COUNTERCLAIMS

GeoTag, Inc. ("GeoTag") responds to the allegations in the Complaint filed by Plaintiffs Microsoft Corporation ("Microsoft") and Google, Inc. ("Google") (collectively "Plaintiffs") and alleges counterclaims as set forth below.  Unless specifically admitted below, GeoTag denies each and every allegation set forth in the Amended Complaint.

## ANSWER

GeoTag answers the Complaint on a paragraph by paragraph basis as follows:

1.      GeoTag admits that Plaintiffs seek a declaratory judgment that U.S. Patent No. 5,930,474 (the "'474 Patent") is invalid and is not infringed by the use of Plaintiffs' web mapping services.  GeoTag denies the remainder of the allegations of Paragraph 1 of the Complaint.

2.      GeoTag admits the allegations contained in Paragraph 2 of the Complaint.

3.      GeoTag admits the allegations contained in Paragraph 3 of the Complaint.

4.      GeoTag admits that, at the time of the filing of the Complaint, the allegations contained in Paragraph 4 of the Complaint were true.  GeoTag presently denies such allegations.

5.      GeoTag denies the allegations contained in Paragraph 5 of the Complaint.

1

34.     GeoTag denies the allegations contained in Paragraph 34 of the Complaint.

35.     GeoTag denies the allegations contained in Paragraph 35 of the Complaint.

36.     GeoTag denies the allegations contained in Paragraph 36 of the Complaint.

37.     GeoTag incorporates and re-alleges its responses to paragraphs 1 through 36 of the Complaint.

38.     GeoTag denies the allegations contained in Paragraph 38 of the Complaint.

39.     GeoTag denies the allegations contained in Paragraph 39 of the Complaint.

40.     GeoTag denies the allegations contained in Paragraph 40 of the Complaint.

41.     GeoTag denies the allegations contained in Paragraph 41 of the Complaint.

42.     GeoTag denies that Plaintiffs are entitled to any of the relief sought in their Request for Relief.

## COUNTERCLAIMS AGAINST MICROSOFT

1.      Counterplaintiff GeoTag, Inc. ("GeoTag") for its counterclaims against Counterdefendant Microsoft ("Microsoft") states as follows:

2.      These counterclaims arise under the Patent Laws of the United States, Title 35 U.S.C. § 100 *et seq*. The Court's jurisdiction over the subject matter of these counterclaims is based on 28 U.S.C. § 1338.

3.      Counterplaintiff GeoTag, Inc. is a Texas corporation with a place of business in Frisco, Texas.

4.      On July 27, 1999, United States Patent No. 5,930,474 ("the '474 Patent") was duly and legally issued.  The '474 is titled "Internet Organizer for Accessing Geographically and Topically Based Information" and is directed to a software interface which organizes information based on the geographical area of the resources about which the information is desired.  A true

and correct copy of the '474 Patent is attached hereto as Exhibit "A" and incorporated herein by reference. Generally, the '474 Patent discloses systems and methods for integrating geographically organized data with topical data to help Internet users find information on the Internet quickly and efficiently. The invention also allows a seller to make his goods or services available upon a user-search predicated on varying geographic levels (*e.g.*, city, state, *etc.*).

5. By assignment, GeoTag owns all title, rights and interests in the '474 patent-in-suit, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '474 Patent.

6. Microsoft has alleged that customers of its "Mapping Services" have been sued by GeoTag for infringement of the '474 Patent "based on the use of Mapping Services to create store locators and similar locator services on websites." Microsoft has further alleged that some of these customers have "sought indemnity and defense" from it based upon such allegations and that there is an actual controversy between Microsoft and GeoTag regarding whether "customers infringe the '474 Patent by use of Microsoft's Bing Maps . . . for the purposes of store locator services, or other similar uses." To the extent that Microsoft has made internal use of the inventions claimed in the '474 Patent for the purposes of providing store locator services, such as, but not limited to, internal testing of any store locator services provided by it to any customers of its "Mapping Services," then Microsoft has infringed the '474 patent.

7. GeoTag's claim of infringement of the '474 Patent against Microsoft relating to the provision store locator services to any of its customers is based only upon Microsoft's internal use of the inventions claimed by the '474 patent and is not based upon Microsoft's sale or distribution of any store locator services to any third party, including any other person who has been sued by GeoTag for infringement of the '474 patent.

8.    Microsoft has been and now is directly infringing the '474 patent in violation of 35 U.S.C. § 271 by using in the United States systems and methods for integrating geographically organized data with topical data, including, but not limited to, the following systems and methods:

(a)    the Bing geographic location search engine (http://www.bing.com/);

(b)    the Bing images search engine (http://www.bing.com/images);

(c)    the Bing local search engine (http://www.bing.com/local);

(d)    the Bing news search engine (http://www.bing.com/news);

(e)    the Bing maps search engine (http://www.bing.com/maps);

(f)    the Bing local news search engine (http://www.bing.com/news/search?q=&p1=%5bNewsVertical+Category%3d%22rt_Local%22%5d&FORM=R5FD2);

(g)    the Bing travel search engine (http://www.bing.com/travel);

(h)    the Bing events search engine (http://www.bing.com/events);

(i)    the Bing shopping search engine (http://www.bing.com/shopping);

(j)    the Bing deals search engine (http://www.bing.com/shopping/deals);

(k)    the Bing weekly ads search engine (http://www.bing.com/shopping/deals/circular);

(l)    the Bing movies search engine (http://www.bing.com/movies);

(m)    the Bing weather search engine (http://www.bing.com/weather);

(n)    the Bing autos search engine (http://www.bing.com/autos);

(o)    the Bing mobile ads search engine (https://adcenter.microsoft.com/Campaign/NewCampaign);

(p)    the Bing web text ad search engine (https://adcenter.microsoft.com/Campaign/NewCampaign);

(q)    the Bing TV search engine (http://www.bing/com/tv); and

(r)    the Microsoft careers feature (https://careers.microsoft.com).

9.     GeoTag has been damaged as a result of Microsoft's infringing conduct. Defendants are thus liable to GeoTag for damages in an amount that adequately compensates for Microsoft's infringement, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

10.    In addition, Microsoft's infringement has been willful thus entitling GeoTag to additional damages as authorized by 35 U.S.C. §284.

11.    Upon information and belief, Microsoft will continue its infringement of one or more claims of the '474 Patent unless enjoined by the Court.  Microsoft's infringing conduct thus causes GeoTag irreparable harm and will continue to cause such harm without the issuance of an injunction.

## COUNTERCLAIMS AGAINST GOOGLE

12.    Counterplaintiff GeoTag for its counterclaims against Counterdefendant Google ("Google") states as follows:

13.    These counterclaims arise under the Patent Laws of the United States, Title 35 U.S.C. § 100 *et seq*. The Court's jurisdiction over the subject matter of these counterclaims is based on 28 U.S.C. § 1338.

14.    Plaintiff GeoTag is a Texas corporation with a place of business in Frisco, Texas.

15.    On July 27, 1999, United States Patent No. 5,930,474 ("the '474 Patent") was duly and legally issued.  The '474 is titled "Internet Organizer for Accessing Geographically and Topically Based Information" and is directed to a software interface which organizes information based on the geographical area of the resources about which the information is desired.  A true

and correct copy of the '474 Patent is attached hereto as Exhibit "A" and incorporated herein by reference.  Generally, the '474 Patent discloses systems and methods for integrating geographically organized data with topical data to help Internet users find information on the Internet quickly and efficiently.  The invention also allows a seller to make his goods or services available upon a user-search predicated on varying geographic levels (*e.g.,* city, state, *etc.*).

16.     By assignment, GeoTag owns all title, rights and interests in the '474 patent-in-suit, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '474 Patent.

17.     Google has alleged that customers of its "Mapping Services" have been sued by GeoTag for infringement of the '474 Patent "based on the use of Mapping Services to create store locators and similar locator services on websites."  Google has further alleged that some of these customers have "sought indemnity and defense" from it based upon such allegations and that there is an actual controversy between Google and GeoTag regarding whether "customers infringe the '474 Patent by use of "Google's 'Google Maps' service for the purposes of store locator services, or other similar uses."  To the extent that Google has made internal use of the inventions claimed in the '474 Patent for the purposes of providing store locator services, such as, but not limited to, internal testing of any store locator services provided by it to any customers of its "Mapping Services," then Google has infringed the '474 patent.

18.     GeoTag's claim of infringement of the '474 Patent against Google relating to the provision store locator services to any of its customers is based only upon Google's internal use of the inventions claimed by the '474 patent and is not based upon Google's sale or distribution of any store locator services to any third party, including any other person who has been sued by GeoTag for infringement of the '474 patent.

8

19.     Google has been and now is directly infringing the '474 patent in violation of 35 U.S.C. § 271 by using in the United States systems and methods for integrating geographically organized data with topical data, including, but not limited to, the following systems and methods:

(a)     Google Ad Words (https://adwords.google.com);

(b)     Google Adwords Express;

(c)     Google Maps (http://www.google.com/maps);

(d)     Google Places http://www.google.com/places/;

(e)     Google Public Alerts (www.google.org/publicalerts);

(f)     Google latitude (www.google.com/latitudes);

(g)     Google Analytics (www.google.com/latitudes);

(h)     Google Offers (http://www.google.com/offers);

(i)     Google TV;

(j)     Google + (https://plus.google.com);

(k)     Google Search (www.google.com);

(l)     Google News (www.google.com/news); and

(m)     Panaramio (www.panaramio.com).

20.     GeoTag has been damaged as a result of Google's infringing conduct. Google is thus liable to GeoTag for damages in an amount that adequately compensates for Google's infringement, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

21. In addition, Google's infringement has been willful thus entitling GeoTag to additional damages as authorized by 35 U.S.C. § 284.

22. Upon information and belief, Google will continue its infringement of one or more claims of the '474 Patent unless enjoined by the Court. Google's infringing conduct thus causes GeoTag irreparable harm and will continue to cause such harm without the issuance of an injunction.

## JURY DEMAND

GeoTag hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, GeoTag respectfully requests that the Court find in its favor and against Microsoft and Google, and that the Court grant GeoTag the following relief via entry of a final judgment that:

1. Microsoft and Google have infringed the patents-in-suit;

2. Microsoft and Google account for and pay to GeoTag all damages caused by their respective infringement of the patents-in-suit; and

3. GeoTag be granted pre-judgment and post-judgment interest on the damages caused to it by reason of one or more of Microsoft's and Google's patent infringement;

4. The Court declare this an exceptional case and that GeoTag be granted its reasonable attorneys' fees in accordance with 35 U.S.C. § 285;

5. Costs be awarded to GeoTag; and

6. GeoTag be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated:  February 13, 2012          By:   */s/ Kenneth L. Dorsney*
                                         Kenneth L. Dorsney (#3726)
                                         MORRIS JAMES LLP
                                         500 Delaware Avenue, Suite 1500
                                         Wilmington, DE  19801
                                         (302) 888-6800
                                         kdorsney@morrisjames.com

                                         *Attorneys for Defendant Geotag, Inc.*

11

# EXHIBIT 4

# *State of Delaware*
# *Annual Franchise Tax Report*

SDOCLMS

| | | |
|---|---|---|
| CORPORATION NAME | | TAX YR. |
| GEOTAG INC. | | 2011 |

| FILE NUMBER | INCORPORATION DATE | RENEWAL/REVOCATION DATE | PHONE NUMBER |
|---|---|---|---|
| 4849708 | 2010/07/16 | | (972) 957-7101 |

PRINCIPAL PLACE OF BUSINESS    STREET/CITY/STATE/ZIP

2591 DALLAS PARKWAY STE 205 , FRISCO, TX 75034

REGISTERED AGENT

USA CORPORATE SERVICES INC.                                9172335

3500 SOUTH DUPONT HIGHWAY

DOVER                    DE 19901

| AUTHORIZED STOCK | | DESIGNATION/ | NO. OF SHARES | PAR VALUE/ SHARE |
|---|---|---|---|---|
| BEGIN DATE | END DATE | STOCK CLASS | | |
| 2011/03/01 | | COMMON | 100,000,000 | .010000 |
| 2010/07/16 | 2011/03/01 | COMMON | 200,000,000 | .010000 |

| OFFICER | NAME | STREET/CITY/STATE/ZIP |
|---|---|---|
| PRESIDENT | LAWRENCE P. HOWORTH | 2591 DALLAS PARKWAY STE 205 FRISCO, TX 75034 |

| DIRECTORS    NAME | STREET/CITY/STATE/ZIP |
|---|---|
| LAWRENCE P. HOWORTH | 2591 DALLAS PARKWAY STE 205 FRISCO, TX 75034 |
| ROGER CURRY | 2591 DALLAS PARKWAY STE 205 FRISCO, TX 75034 |
| DAVID BEASTON | 2591 DALLAS PARKWAY STE 205 FRISCO, TX 75034 |
| ERIC BLOT-LEFEVRE | 2591 DALLAS PARKWAY STE 205 FRISCO, TX 75034 |
| JOHN VEENSTRA | 2591 DALLAS PARKWAY STE 205 FRISCO, TX 75034 |
| ANTHONY NORRIS | 2591 DALLAS PARKWAY STE 205 FRISCO, TX 75034 |

Total number of directors:    6

NOTICE: *Pursuant to 8 Del. C. 502(b). If any officer or director of a corporation required to make an annual franchise tax report to the Secretary of State shall knowingly make any false statement in the report, such officer or director shall be guilty of perjury.*

Authorized by (officer, director or incorporator)(street, city, state, postal code(zip) and country)

Signature (X)                                          date 10/7/11  title PRESIDENT

# *State of Delaware*
# *Annual Franchise Tax Report*

| CORPORATION NAME | TAX YR |
|---|---|
| GEOTAG INC. | 2011 |

| FILE NUMBER | FEDERAL EMPLOYER ID NO. |
|---|---|
| 4849708 | 27-30729 |

ASSETS FOR REGULATED INVESTMENT CORPS
JAN. 1st.          DEC. 31st.

Date(s) of Inactivity
From          To

| TOTAL NUMBER OF SHARES ISSUED | TOTAL GROSS ASSETS | ASSET DATE |
|---|---|---|
| 135,398,243 | 76,547,867 | 2/28/2011 |
| 33,849,522 | 80,258,905 | 8/15/2011 |
| 46,349,522 | 77,700,615 | 10/07/2011 |

| Franchise Tax | Penalty | 1.5% Monthly Interest | Annual Filing Fee | Prev Credit or Balance |
|---|---|---|---|---|
| 49,287.67 | 0.00 | 568.81 | 50.00 | 0.00 |

| Prepaid Qrty. Payments | Amount Due | Amount Paid | Check Number |
|---|---|---|---|
| 0.00 | 49,906.48 | | |

# EXHIBIT 5

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WHERE 2 GET IT, INC.,          )
                               )
          Plaintiff,           )
                               ) C.A. 11-223-GMS
     v.                        )
                               )
GEOTAG, INC.,                  )
                               )
          Defendant.           )

                         Tuesday, March 6, 2012
                         1:30 p.m.

                         844 King Street
                         Wilmington, Delaware

BEFORE: THE HONORABLE RICHARD G. ANDREWS
        United States District Court Judge

APPEARANCES:

        MORRIS, JAMES, LLP
        BY:  KENNETH L. DORSEY, ESQ.

                    -and-

        BUETHER JOE & CARPENTER, LLC
        BY:  ERIC W. BUETHER, ESQ.

                    Counsel for the Plaintiff


        STAMOULIS & WEINBLATT, LLC
        BY:  RICHARD C. WEINBLATT, ESQ.

                    -and-

        SEYFARTH SHAW, LLP
        BY:  DANIEL J. SCHWARTZ, ESQ.

                    Counsel for the Defendant

        Hawkins Reporting Service
715 N. King Street - Wilmington, Delaware  19801
                302-658-6697

---

2

1   APPEARANCES CONTINUED:
2
3       MORRIS NICHOLS ARSHT & TUNNELL, LLP
        BY:  DONALD E. REID, ESQ.
4
                    -and-
5
        JONES DAY
6       BY:  GREGORY L. LIPPETZ, ESQ.

7                   Counsel for Nielsen, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

13:19:42
            Hawkins Reporting Service
715 N. King Street - Wilmington, Delaware  19801
                302-658-6697

---

13:35:34   1          THE CLERK:  All rise.
13:35:40   2          THE COURT:  Good afternoon.
13:35:40   3   Everyone be seated.
13:35:48   4          All right.  Well, it's pretty good.
13:35:50   5   Four of the six people I recognize.
13:35:50   6          So this is Where 2 Get It, Inc.
13:35:56   7   versus Geotag.  Number 11-223.  And there are two
13:36:00   8   motions.
13:36:00   9          There's Geotag's motion to transfer
13:36:04   10  to the Eastern District of Texas.  And there's
13:36:06   11  the motion about Nielsen-Wilke to permissibly
13:36:12   12  intervene.
13:36:14   13         And my thought was that I would hear
13:36:16   14  Mr. Reid first, if that doesn't offend anyone
13:36:20   15  greatly.
13:36:24   16         MR. BUETHER:  It's your Court, Your
13:36:28   17  Honor.  Anything you would do won't offend.
13:36:30   18         THE COURT:  So Mr. Reid.
13:36:32   19         MR. REID:  Donald Reid on behalf of
13:36:36   20  the intervenors.  With Your Honor's permission,
13:36:38   21  I'd like to introduce Gregory Lippetz.
13:36:42   22         THE COURT:  All right.  Good
13:36:44   23  afternoon, Mr. Lippetz.
13:36:44   24         MR. REID:  He has been admitted pro
            Hawkins Reporting Service
        715 N. King Street - Wilmington, Delaware  19801
                    302-658-6697

---

4

13:36:46   1   hac and he represents the Nielsen Company, LLC.
13:36:50   2   And with Your Honor's permission, he will present
13:36:52   3   argument.
13:36:52   4          THE COURT:  There are two companies
13:36:54   5   who are trying to intervene.  Does the other one
13:36:56   6   have a separate attorney?
13:36:58   7          MR. REID:  No separate attorney
13:37:00   8   other than myself, Your Honor.
13:37:00   9          THE COURT:  All right.  So he's
13:37:02   10  going to present the argument for both companies?
13:37:04   11         MR. REID:  He's going to present
13:37:06   12  argument for his company and we're going to adopt
13:37:08   13  the argument.
13:37:08   14         THE COURT:  All right.  Good.
13:37:10   15  Thank you.
13:37:10   16         So Mr. Lippetz, I think you should
13:37:16   17  limit yourself to five minutes here.
13:37:16   18         MR. LIPPETZ:  Fine, Your Honor.
13:37:16   19  Most of what I would say has been in our papers
13:37:20   20  already.  I'll highlight a couple of things.
13:37:22   21         I think one of the potentially
13:37:26   22  confusing issues in the motion has to do with the
13:37:32   23  Geotag one, the plaintiff of the -- patentholders
13:37:32   24  of innovation of Rule 20 as an
            Hawkins Reporting Service
        715 N. King Street - Wilmington, Delaware  19801
                    302-658-6697

13:44:56 1   piggyback, if you will, or you know, ride
13:45:00 2   alongside the Where 2 Get It lawsuit.  And they
13:45:04 3   can't do that if they don't satisfy personal
13:45:04 4   jurisdiction.
13:45:06 5           And that's where Rule 20 comes into
13:45:08 6   effect, I believe, is because they are not
13:45:12 7   intervening based upon a legal or factual
13:45:16 8   connection to Where 2 Get It, other than the
13:45:18 9   abstract legal issue of invalidity.  Which, in
13:45:20 10  that case, anyone could intervene in anybody's
13:45:24 11  declaration on the theory that, Well, I think the
13:45:26 12  patent's invalid, too.
13:45:28 13          So let me become a plaintiff, too.
13:45:30 14  The Courts don't authorize that.
13:45:32 15          And so I think in this unusual
13:45:34 16  situation where you have a party trying to
13:45:36 17  intervene as a co-plaintiff, the Court should
13:45:40 18  look at Rule 20.  And I did find a case after the
13:45:42 19  challenge was laid down.
13:45:44 20          I would just cite it to the Court.
13:45:48 21  Hobbs versus County of Summit, 2011 U.S. District
13:45:52 22  Lexis 94033.
13:45:54 23          THE COURT:  94033.
13:45:56 24          MR. BUETHER:  It's a Northern

13:45:58 1   District of Ohio decision on August 23rd of 2011
13:46:02 2   which looked at what they called permissive
13:46:04 3   intervention/joinder.  And in that case, found
13:46:10 4   that -- although they found that the Rule 24
13:46:14 5   requirements under 1(a), where there was no
13:46:18 6   intervention of rights, they relied on -- rather
13:46:22 7   they rely on what they assert is a common
13:46:24 8   question of law or fact.
13:46:26 9           But then the Court cited -- and then
13:46:28 10  the Court cited Rules 20(a)(1)(b), (a)(2)(b) and
13:46:32 11  then 24(b)(1)(b).  Clearly, however, the facts
13:46:36 12  surrounding the arrest, detentions and
13:46:38 13  prosecutions of Hobbs, et cetera, are so very
13:46:40 14  different one from another, that any possible
13:46:42 15  commonality pails by comparison by money.
13:46:46 16          My point is that in that case and
13:46:48 17  like this one is very unusual in that a party is
13:46:52 18  seeking to intervene as a co-plaintiff.  And I
13:46:54 19  believe in that situation Rule 20 has to be
13:46:56 20  complied with.
13:46:58 21          Otherwise, it would be a neat trick
13:47:00 22  if two parties wanted to be co-plaintiffs, but
13:47:02 23  knowing that they couldn't bring the action
13:47:04 24  together under Rule 20 decided, Okay.  I'll tell

13:47:08 1   you what:  I'll file the lawsuit, and then you
13:47:12 2   just intervene, because then we skirt around Rule
13:47:14 3   20 that way.
13:47:16 4           Clearly, the rules do not intend to
13:47:16 5   allow that kind of side stepping of the
13:47:20 6   requirements for parties to be co-plaintiff.  But
13:47:24 7   that's exactly what is being done here is a side
13:47:26 8   stepping on joinder.  But more importantly, on
13:47:30 9   personal jurisdiction.
13:47:30 10          And it's undisputed that Geotag, at
13:47:34 11  the time this motion was filed --
13:47:38 12          THE COURT:  I saw it.
13:47:38 13          MR. BUETHER:  -- was no longer a
13:47:40 14  Delaware corporation.
13:47:40 15          THE COURT:  I saw that affidavit.
13:47:42 16          MR. BUETHER:  It did that for a
13:47:44 17  reason.  It wanted to control where it was going
13:47:46 18  to be sued.
13:47:46 19          Okay.  And so, you know, that's the
13:47:50 20  privilege.  And --
13:47:50 21          THE COURT:  Certainly, yes.
13:47:50 22          MR. BUETHER:  -- so that behavior,
13:47:56 23  that conduct needs to be respected as a matter of
13:48:00 24  due process under the Constitution.  And that it

13:48:02 1   can't be hailed into Court, that it wouldn't --
13:48:06 2   it shouldn't be held in front of based upon due
13:48:08 3   process considerations.
13:48:10 4           If we could just go to Slide 9, I'll
13:48:12 5   just jump to that one.
13:48:14 6           Well, there's a little history.  We
13:48:18 7   cited the Paine Webber case about there having to
13:48:22 8   be an independent jurisdictional basis.  That Jet
13:48:24 9   Traders case out of this case --
13:48:26 10          THE COURT:  This is the one by
13:48:30 11  Judge --
13:48:30 12          MR. BUETHER:  Let's go back to Slide
13:48:32 13  4 or 5.  I'm sorry, 5.  Let's go back to 5, Jet
13:48:32 14  Traders.
13:48:38 15          This is the Paine Webber case, and I
13:48:38 16  can't, frankly, remember which judge issued the
13:48:42 17  decision.  I didn't remember that.
13:48:44 18          But back in 1938, you know, an
13:48:46 19  intervenor must establish --
13:48:48 20          THE COURT:  There was a case you
13:48:48 21  cited in your brief that was, I think, from Judge
13:48:52 22  Stark.
13:48:52 23          MR. BUETHER:  That might have been
13:48:54 24  the Jet Traders case, which is the next one.  I

41

1  including the filing of an independent suit,
2  showed that the actual controversy existed as of
3  that later date.
4       However, we agree with the District
5  Court that these acts, after the filing of KCI'S
6  original Complaint, did not establish that an
7  actual controversy existed at that earlier time.
8  And then cites the Grupo case.
9       So it seems natural, you know,
10 that -- well, now you sued them.  But, no, I mean
11 it has to exist at all times of the litigation
12 from the very beginning to the very end.
13      And if it didn't exist at the very
14 beginning, it can't be cured, if you will, or
15 retroactively, you know, made an actual
16 controversy by a subsequent act.
17      And now we're getting into the what
18 I call the motion to dismiss.  As a matter of
19 duty right now on this issue, it's a motion to
20 dismiss.  It's basically saying you have
21 discretion in a declaratory judgment act to
22 either entertain it or not, assuming you have
23 jurisdiction.
24      THE COURT:  Well --

Hawkins Reporting Service
715 N. King Street - Wilmington, Delaware  19801
302-658-6697

43

1  factor.  Is there anything else you want to tell
2  me?
3       MR. BUETHER:  Well, yeah.  On the
4  actual controversy issue, I've got, you know, the
5  only fact alleged by Where 2 Get It to justify
6  subject matter jurisdiction is the allegation
7  that customers have requested indemnification.
8       If we could go to Slide 19.  So it
9  just talks about have sought indemnity from the
10 plaintiff.  That's their allegation in the
11 Complaint.  The only allegation in their
12 affidavit in response to our motion.
13      Next page.  I first became aware of
14 the lawsuit filed by Geotag.  In addition,
15 several of those customers also inquired about
16 indemnification issues around that same time.
17      THE COURT:  So your point being,
18 regardless of the Google-Microsoft so impressed
19 by the ten letters from the --
20      MR. BUETHER:  They didn't submit
21 letters.  I wouldn't -- I would submit the
22 letters.  Don't cut -- this is a recent case that
23 we deem to -- it came out after all the briefing
24 down here.  And --

Hawkins Reporting Service
715 N. King Street - Wilmington, Delaware  19801
302-658-6697

42

1       MR. BUETHER:  And you should not for
2  this reason.
3       THE COURT:  The standard is roughly
4  the same.
5       MR. BUETHER:  I'm sorry?
6       THE COURT:  Well, since the
7  standard, I think, is roughly the same, the
8  discretionary dismissal as opposed to
9  transferring to Texas, right?
10      I mean, basically I consider the
11 same things for either one.
12      MR. BUETHER:  Well, yes.  But the
13 zinger, if you will, the added factor, which the
14 Courts have said you should consider, is this
15 tactic of using the declaratory judgment action
16 to get an advantage.
17      THE COURT:  Right.  So that's
18 something that's present that was not present in
19 the Microsoft.
20      MR. BUETHER:  Exactly.  Exactly.
21      And I would submit if you go to -- I
22 mean, so therefore, this is an important factor
23 that wasn't --
24      THE COURT:  So, I've got this

Hawkins Reporting Service
715 N. King Street - Wilmington, Delaware  19801
302-658-6697

44

1       THE COURT:  No.  No.
2       I mean, here there are no letters,
3  even where the letters cut it or not.
4       MR. BUETHER:  There's no letters.
5  There's just a vague, vague statement.
6       THE COURT:  Well, I mean, inquiry is
7  somewhat different than the, what I call, the
8  Google-Microsoft being, Live up to your contract.
9       MR. BUETHER:  Yeah.  I mean, they
10 never showed that they accepted those, which I --
11      THE COURT:  No.  No.
12      MR. BUETHER:  We've already argued
13 that.  But here is where -- there was a Texas
14 action involving ten or more defendants, and the
15 declaratory action plaintiff was saying that the
16 Texas action triggered independent requests.
17      And the Courts here said that that
18 is insufficient to warrant the Court's
19 jurisdiction for this action.  Although Arris
20 noted that this indemnification obligation could
21 establish an actual controversy.
22      The Court designed to reach the
23 indemnification issue in finding jurisdiction
24 proper, and there it mentioned the words

Hawkins Reporting Service
715 N. King Street - Wilmington, Delaware  19801
302-658-6697

81

| 14:56:42 | 1 | traded back and forth various things, including |
| 14:56:46 | 2 | covenants not to sue. |
| 14:56:46 | 3 | And at some point in due course, |
| 14:56:50 | 4 | Google-Microsoft brought the declaratory judgment |
| 14:56:52 | 5 | here. And for whatever reasons, and maybe it's |
| 14:56:58 | 6 | irrelevant, Geotag did not choose to sue |
| 14:57:02 | 7 | Microsoft and Google in Texas. |
| 14:57:12 | 8 | So I think the interest of justice |
| 14:57:16 | 9 | supports management and resolution of all the |
| 14:57:18 | 10 | Geotag cases by one judge. Of course, to some |
| 14:57:22 | 11 | extent, that is not happening because we've got a |
| 14:57:26 | 12 | lot of them in Texas. And now we've got the |
| 14:57:28 | 13 | Microsoft and Google in Delaware. But that |
| 14:57:30 | 14 | doesn't really provide the answer to the question |
| 14:57:32 | 15 | whether it should be a Texas or Delaware judge |
| 14:57:34 | 16 | who's handling this case. |
| 14:57:36 | 17 | I do think here that Where 2 Get It |
| 14:57:42 | 18 | did race to the courthouse and file its |
| 14:57:46 | 19 | declaratory judgment. Geotag then raced to the |
| 14:57:48 | 20 | courthouse and filed it in Texas the next day. |
| 14:57:50 | 21 | That is, I think, the difference |
| 14:57:54 | 22 | between -- a significant difference between this |
| 14:57:58 | 23 | case and Google and Microsoft versus Geotag case, |
| 14:58:06 | 24 | and where through argument and through my |

Hawkins Reporting Service

715 N. King Street - Wilmington, Delaware 19801

302-658-6697

82

| 14:58:10 | 1 | decision, Geotag maintains its posture that it |
| 14:58:14 | 2 | had no dispute with Google-Microsoft, and the |
| 14:58:18 | 3 | Google-Microsoft did not infringe any of its |
| 14:58:22 | 4 | patents and did not have any reason to be in |
| 14:58:24 | 5 | litigation with them. |
| 14:58:26 | 6 | Under Third Circuit law, |
| 14:58:28 | 7 | considerable deference is given to the |
| 14:58:28 | 8 | plaintiff's choice of forum. Given the Geotag |
| 14:58:32 | 9 | versus Where 2 Get It suit in Texas, I think, and |
| 14:58:38 | 10 | for the reasons that I've said about the other |
| 14:58:40 | 11 | factors, including the race to the courthouse |
| 14:58:42 | 12 | factor, which I think that the Micron case |
| 14:58:50 | 13 | teaches that I should pay some attention to, I |
| 14:58:54 | 14 | think the defendant has shown that the balance of |
| 14:58:56 | 15 | convenience tips significantly enough in its |
| 14:58:58 | 16 | favor, so that the transfer should be ordered. |
| 14:59:02 | 17 | And I will, therefore, grant the |
| 14:59:02 | 18 | defendant's motion to transfer and I will enter |
| 14:59:06 | 19 | an order to that effect. |
| 14:59:08 | 20 | Thank you. We're in recess. |
| 14:59:14 | 21 | THE CLERK: All rise. |
| | 22 | (Court was recessed at 2:56 p.m.) |
| | 23 | |
| | 24 | |

Hawkins Reporting Service

715 N. King Street - Wilmington, Delaware 19801

302-658-6697

83

| 1 | State of Delaware) |
| | ) |
| 2 | New Castle County) |

3

CERTIFICATE OF REPORTER

4

5       I, Heather M. Triozzi, Certified
Professional Reporter, Registered Professional
6   Reporter and Notary Public in the State of
Delaware, do hereby certify that the proceedings
7   from Page 1 to 84 inclusive, taken on the 6th day
of March, 2012, were taken down by me in
8   Stenotype notes and thereafter transcribed into
typewriting under my direction.
9       I further certify that the foregoing
is a true and correct transcript of the above
10   proceedings.
        I further certify that I am not
11   counsel, attorney, or relative of either party,
or otherwise interested in the event of this
12   suit.

13

14                     Heather M. Triozzi, CSR, RPR
                       Cert. No:  184-PS
15   Exp:  Permanent

16

17

18

DATED:  March 14, 2012

Hawkins Reporting Service
715 N. King Street - Wilmington, Delaware  19801
302-658-6697

# EXHIBIT 6

**From:** Dorsney, Kenneth L. [mailto:KDorsney@morrisjames.com]
**Sent:** Thursday, May 24, 2012 3:53 PM
**To:** Grimm, Thomas
**Subject:** RE: Taleo - Complaint and patent

Tom,

Thank you for your email. Yes, in confirmation of your email below, GeoTag will accept service on the condition that by doing so GeoTag is not waiving any defense, including any jurisdictional defense. GeoTag will move, answer, or otherwise plead in response within 30 days of your May 22 email – June 21, 2012.

Best,

Ken

## Morris James LLP

**Kenneth L. Dorsney**
Attorney at Law
kdorsney@morrisjames.com

500 Delaware Ave., Ste. 1500 | Wilmington, DE 19801-1494
Mailing Address P.O. Box 2306 | Wilmington, DE 19899-2306
**T** 302.888.6855    **F** 302.571.1750

**www.morrisjames.com**

This communication may be subject to the attorney-client privilege or the attorney work product privilege or may be otherwise confidential. Any dissemination, copying or use of this communication by or to anyone other than the designated and intended recipient(s) is unauthorized. If you are not the intended recipient, please delete or destroy this communication immediately.

To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Grimm, Thomas [mailto:TGrimm@MNAT.com]
**Sent:** Tuesday, May 22, 2012 2:05 PM
**To:** Dorsney, Kenneth L.
**Subject:** FW: Taleo - Complaint and patent

Hi Ken:

Here is a service copy of the complaint (with exhibit). This will confirm your agreement to accept service of the complaint on behalf of GeoTag on the express condition that by doing so Geotag is not waiving any defense, including any jurisdictional defense. This will also confirm our understanding that GeoTag will answer, move, or otherwise plead in response within 30 days hereof – June 21, 2012. Please confirm by response email.

Tom

Thomas C. Grimm
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Direct Dial: 302-351-9595
Direct Fax: 302-425-4661
e-mail: tgrimm@mnat.com

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.