```
 1     UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF DELAWARE

 3

 4     ORACLE AMERICA INC.,          :   CA NO. 12-621-RGA

 5                                    :   March 26, 2013

 6                  Plaintiff        :

 7                                    :

 8                                    :   4:00 o'clock p.m.

 9     v.                            :

10                                        :

11     GEOTAG INC.,                  :

12                                        :

13                  Defendant.       :

14     ...........................:

15

16

17                    TRANSCRIPT OF MOTION HEARING

18            BEFORE THE HONORABLE RICHARD G. ANDREWS

19                  UNITED STATES DISTRICT JUDGE

20

21

22     APPEARANCES:

23

24     For Plaintiff:    MORRIS, NICHOLS, ARSHT & TUNNELL

25                       BY:  THOMAS C. GRIMM, ESQ
```

```
 1                              -and-

 2                    NIXON PEABODY LLP

 3                    BY:  JASON C. KRAVITZ, ESQ

 4

 5

 6    For Defendant:   MORRIS JAMES LLP

 7                    BY:  KENNETH L. DORSNEY, ESQ

 8                         -and-

 9                    DIRECTION IP LAW

10                    BY:  DAVID R. BENNETT, ESQ

11

12    Also Present:    PETER O'ROURKE, ESQ

13                    In-House Counsel for Oracle

14

15

16

17    Court Reporter:     LEONARD A. DIBBS

18                        Official Court Reporter

19

20

21

22

23

24

25
```

1

2                           P R O C E E D I N G S

3

4                    THE COURT:  Good afternoon.  Please be seated.

5               This is Oracle vs. GeoTag, which used to be Taleo vs.

6        GeoTag.  It's Case Number 12-621.

7                    Mr. Grimm, you represent the plaintiff here.

8                    Mr. Dorsney, you represent the defendant.

9                    And I guess it is the defendant's motion.  I will hear

10       from them first.

11                   THE COURT:  Introduce your people.

12                   MR. GRIMM:  I will.

13                   I do represent Oracle America.  Your Honor will recall

14       we were here a year ago on a Motion to Intervene, which your

15       Honor denied, but we indicated at that time that we would be

16       filing this motion.

17                   THE COURT:  You certainly did.

18                   MR. GRIMM:  Okay.  So with me today is my co-counsel

19       from Nixon Peabody, Jason Kravitz.  And Mr. Kravitz will make

20       the argument today.

21                   And also with me is in-house counsel from Oracle

22       America, Peter O'Rourke.

23                   THE COURT:  Thank you, Mr. Grimm.

24                   Nice to see you, Mr. Kravitz and Mr. O'Rourke.

25                   Mr. Dorsney, nice to see you, too.

1              MR. DORSNEY:  You, too, your Honor.

2              Good afternoon, your Honor.

3              For GeoTag, Ken Dorsney from Morris James.  With me is

4       my co-counsel, David Bennett from Direction IP Law.

5               THE COURT:  Have I seen you somewhere before?

6              MR. BENNETT:  Yes.

7              THE COURT:  You look kind of familiar.

8              All right.  I guess this is GeoTag's motion.

9              Let's be quick.

10             MR. BENNETT:  If I may just give you a brief

11      background, because this case is related to the Texas GeoTag

12      action?

13             THE COURT:  I think I actually have the background

14      pretty good.

15             MR. BENNETT:  Okay.  Just in the past two months what

16      has happened --

17             THE COURT:  So in the past two months, I have no idea,

18      so I'm happy to -- just the historical background I got.

19             MR. BENNETT:  Correct.  Correct.

20             I just want to bring you up to date with the past two

21      months.

22             This action is based on GeoTag's action filed in Texas.

23             In the past couple months, the Markman ruling came down

24      in Texas regarding the claim construction.

25             THE COURT:  Actually, I saw that in one of the other

1        GeoTag cases.

2                MR. BENNETT:  The Court ordered mediation in Texas for

3        roughly 230 defendants where GeoTag is currently involved in

4        Court-ordered mediation.  Today they're currently meeting with

5        seven.  That will be completed by April 30th.

6                THE COURT:  Okay.

7                MR. BENNETT:  During that time, Oracle also asked to be

8        mediated in Texas with a mediator, because they're -- they told

9        the mediator that they fully indemnified a number of defendants.

10       I don't remember the exact number -- 12, 16 defendants -- and

11       that they are also handling the cost of defense.  So they

12       requested that a mediator hold mediations with GeoTag in Texas.

13       We did mediate down in Texas last Monday, eight days ago.

14               THE COURT:  When you say you did mediate, you mean

15       GeoTag and Oracle?

16               MR. BENNETT:  GeoTag and Oracle in a separate mediation

17       with a separate mediator.

18               THE COURT:  Okay.

19               MR. BENNETT:  So that --

20               THE COURT:  I guess you're still here.

21               MR. BENNETT:  Well, yes, we are still here.

22               And then the cases in Texas are set to go to trial

23       December 2nd of this year.

24               THE COURT:  Okay.

25               I can't remember.  I think I got one that was supposed

1      to be in November, right?

2              MR. BENNETT:  The Court -- the case was transferred to

3      a new Judge in January and we have a reset of the scheduling.

4              THE COURT:  Yes.  No, no, no.  I just... okay.

5              Well, in any event, that tells me what's going on.

6              All right.

7              MR. BENNETT:  In November, we have a case management

8      conference, with the Court for the December 2nd trial.

9              But GeoTag has also filed a case against Oracle

10     involving the job locator functionality down in Texas back in

11     January of this year and Oracle filed a Motion to Dismiss last

12     week in view of this case currently pending in Delaware.

13             THE COURT:  So just in keeping -- I've lost track now.

14             You said GeoTag sued Oracle in 2013 or 2012?

15             MR. BENNETT:  2013.

16             THE COURT:  Okay.

17             MR. BENNETT:  So it would be after the --

18             THE COURT:  Okay.  So when we're talking about the

19     first filed and second filed cases, this is the first filed?

20             MR. BENNETT:  Well, this would be the -- this would be

21     the first filed case.

22             THE COURT:  All right.

23             MR. BENNETT:  But from GeoTag's perspective, the first

24     filed cases would actually be the ones against their customers,

25     which were seven or more months before what happened, with

1      Oracle's filing of this case here in Delaware.

2             THE COURT:  The way the trial date is set in Texas,

3      because I recall there were, you know, somewhere between 12 and

4      20 defendants per case.

5             Is December 2nd a date for Oracle to go to trial, or is

6      it a date for some unknown subset of defendants, or what --

7      whose trial date is that?

8             MR. BENNETT:  It's definitely GeoTag's trial date.  At

9      this time, the Court has not shown his cards as to who will be

10     going first for the defendants, and it appears likely that the

11     earliest we'll fined that out is probably late November or

12     potentially December 2nd.

13            THE COURT:  This is Judge Gilstrap?

14            MR. BENNETT:  This is Judge Gilstrap, your Honor.

15            THE COURT:  Okay.

16            MR. BENNETT:  So in this case GeoTag believes that

17     there's no personal jurisdiction over GeoTag in the case that

18     was filed, because at the time the case was filed, GeoTag is a

19     Texas entity.  It has no -- nothing here in Texas.  It has no

20     offices.  It does no business here in Delaware.  Everything is

21     down in Texas, the inventors.  One of the inventors is a lead

22     inventor.

23            THE COURT:  No, I mean I take it that the plaintiff's

24     argument here is essentially along the lines of, GeoTag wasn't a

25     Delaware corporation, but sued all our customers.

1          So, now that it's a Texas corporation, it takes its

2     Delaware liability, so to speak, with it.  And one of those

3     Delaware liabilities -- and because it was a Delaware

4     corporation, there's jurisdiction here.

5          I may not be doing justice to their argument, but

6     that's the essence of it.

7          MR. BENNETT:  That is the essence of their argument.

8          But, in this case, if you look at where the actions are

9     that are requiring -- that they're stating on the basis for the

10    Declaratory Judgment action --

11         THE COURT:  They're all down in Texas.

12         MR. BENNETT:  They're all down in Texas.

13         THE COURT:  My impression -- and I'm going to let them

14    speak for themselves in a second -- but I expect they'll concede

15    that if GeoTag had not been a Delaware corporation, you know, up

16    until November 2011, or whenever it was they switched over, that

17    there would be absolutely no basis for jurisdiction here.

18         My impression is that it turns a hundred percent on

19    GeoTag, having once been a Delaware corporation.  That's the

20    only ground.

21         MR. BENNETT:  That's our understanding also, your

22    Honor.

23         THE COURT:  So one of things that interests me -- and I

24    didn't really see it in the briefing, but it's possible that I

25    missed it -- what strikes me as unusual here is the Declaratory

1       Judgment posture of the -- of the lawsuit that's been brought,

2       which in some ways is a forward-looking kind of lawsuit.

3       They're -- they're threatening to sue us, or that there is a

4       substantial dispute, and we want to get into the Court and get

5       it resolved.  And it could be that their actions in the past

6       have contributed to that, you know, fear of being sued.  I

7       suppose being sued in January in Texas might have contributed --

8       may have meant it wasn't totally specious.

9            But what I was wondering was whether -- I didn't see a

10      case cited by the other side that seemed to be sort of what I

11      took to be a Declaratory Judgment action that said we get

12      jurisdiction over defendant, because they used to be -- because

13      their prior corporate existence, there was jurisdiction, there

14      would have been personal jurisdiction.

15           MR. BENNETT:  Yes, I'm not aware of any case that would

16      say that where you previously existed would be the basis of a

17      personal jurisdiction, unless, of course, there was some action

18      within that jurisdiction that led up to that.

19           THE COURT:  And, you know, that's what's kind of

20      unusual about that, because normally, you know, I think there's

21      a doctrine about buying the corporation's rights and

22      liabilities.

23           GeoTag was making a dangerous product that was injuring

24      people in Delaware.  It's pretty obviously, you know, you

25      couldn't became a Texas corporation and say, Oh, we can't do it

1     in Delaware, or, you know, even if -- you know, it makes a lot

2     more sense, but here it's a lot harder to figure out what the

3     right to liability was that existed before you became a Texas

4     corporation.

5          They didn't sue you until eight months after you became

6     a Texas corporation, right?

7          MR. BENNETT:  Seven months.

8          THE COURT:  Seven months.

9          MR. BENNETT:  Correct.

10         In this case, what we believe is that the cases that we

11    cite state that the causes of action related to GeoTag bringing

12    lawsuits in the Eastern District of Texas, so that's really

13    where the activity's occurring.

14         The only thing they rely on for Delaware is the fact

15    that GeoTag filed the Articles of Incorporation here in

16    Delaware.  They're saying that that's really the action or

17    activity.

18         If you look at the case law, it talks about where is

19    the action in patent infringement.  It's where the offense or

20    the accusations of infringement are going, which is down in the

21    Eastern District of Texas.

22         There's no activity here in Delaware that Oracle is

23    accusing GeoTag of doing.  GeoTag did not initiate any lawsuits

24    here in Delaware.  It did respond in the co-pending Microsoft

25    and Google cases with a Counterclaim.  But, again, that's not

1     initiating action.  That is a response.  In fact, a necessary

2     Counterclaim is something that GeoTag wanted to bring.

3          So with respect to the case law, if you are looking at

4     where the action is that occurred, that is resulting in Oracle's

5     Declaratory Judgment action, it's all down in the Eastern

6     District of Texas.

7          They're making some argument about, Well, GeoTag

8     existed in Delaware, but there was no activity that was ever

9     occurring in Delaware.  This is not the situation that you

10    described where GeoTag was a company is selling defective

11    products, or is actively doing something here in Delaware.  All

12    the actions were down in Texas.

13         So I would agree with you that GeoTag has not found any

14    cases which said that a mere corporate existence would forever

15    grant jurisdiction for any future activity.

16         THE COURT:  I don't think it goes quite that far even.

17         I think what they may say is, Well, it's a combination

18    of the corporate existence combined with the things you were

19    doing while the corporation existed.  They may not be things

20    quite like making a product to injure somebody, but you were a

21    Delaware corporation suing 400-odd companies in Texas, as it

22    happens, but it could have been anywhere.

23         And, so, it seems to me that the crux of their argument

24    is even though the activities you were doing weren't in

25    Delaware, you know, you were a Delaware corporation to do these

1    activities to cause them the fear of being sued.

2             I don't know exactly what the allegation is.  And

3    certainly caused many of their indemnities to be -- caused them

4    some actual, I guess, harm.

5             MR. BENNETT:  Well, in terms of the timing, Oracle

6    wasn't even aware, or at least based on their brief, they

7    weren't asking for any indemnifications until October 11th,

8    which was the day after the GeoTag Delaware entity ceased to

9    exist.

10            I guess at some point maybe they could have tried, or

11   maybe earlier have sued, tried to sue the GeoTag Delaware

12   entity.  But in this case, all the activities are going on in

13   Texas, and I think the Federal Circuit law states that when

14   you're looking at the activities of the patentee, where the

15   action is occurring is where you are actually enforcing or

16   defending the patent.  In this case, it's Texas.

17            In terms of just merely being a corporate entity at one

18   time in Delaware, we haven't found any case law that would

19   support a finding of personal jurisdiction in Delaware, after

20   the corporate entity didn't exist any more for an action that

21   has nothing to do with anything going on in Delaware.

22            THE COURT:  All right.

23            Let me hear from the plaintiffs.

24            MR. KRAVITZ:  Thank you, your Honor.

25            THE COURT:  Good afternoon.  Mr. Kravitz.

```
1              Have I seen you before?  You were here at the other
2     intervention.
3              MR. KRAVITZ:  I did, your Honor.
4              THE COURT:  I have to see people multiple times.  I
5     don't actually know why I remember Mr. Bennett.  He must have
6     said something outrageous the previous time.
7              MR. KRAVITZ:  I'm sure that it was, your Honor.
8              Your Honor, so, in this case, GeoTag wants to have its
9     Delaware cake and it wants to eat it in Texas.
10             THE COURT:  Well, it seems like they stopped wanting
11    Delaware cake a while ago.
12             MR. KRAVITZ:  They did.  And they stopped wanting
13    Delaware cake for the admitted purpose of avoiding
14    accountability in this court and other courts in Delaware.
15             And what is interesting is that I feel like our
16    arguments are -- are two ships passing in the night here.
17              GeoTag wants to make this about a traditional
18    Declaratory Judgment action.
19             THE COURT:  Okay.
20             MR. KRAVITZ:  This is --
21             THE COURT:  This is not what this is?
22             MR. KRAVITZ:  I think this is a very unique -- your
23    Honor, your comment earlier about there are not being -- not
24    seeing any cases in the briefing, and Mr. Bennett's comment
25    about him not being aware of any.
```

1          I'm also not an aware of any cases that deal squarely

2     with what we've got here.

3          The reason is, I think this is a pretty unusual set of

4     circumstances.  But there's case law that is pretty close and

5     extraordinarily helpful to the analysis, and it's case law that

6     interestingly doesn't even appear in the reply brief in this

7     case.

8          THE COURT:  Tell me what's the best case that you cited

9     in your brief.

10         MR. KRAVITZ:  I think it's the Goffe case, your Honor,

11    which is from the District of Delaware.  It cites and relies on

12    the Duris case from the Sixth Circuit.

13         And the essence of the Goffe case, your Honor, is that

14    for the purpose of personal jurisdiction analysis, the actions

15    of the constituent company -- so that is sort of the old company

16    -- the old co --

17         THE COURT:  Right.

18         MR. KRAVITZ:  -- the actions of the constituent company

19    are going to flow through to the new company for purposes of the

20    personal jurisdiction analysis.  So anything that --

21         THE COURT:  I take it that Goffe -- and maybe this is

22    the reason why you're not citing it more heavily -- it wasn't a

23    Declaratory Judgment, right?

24         MR. KRAVITZ:  I don't believe it's a Declaratory

25    Judgment action, your Honor.

1              The Duris case that it relies on -- I believe the Goffe

2       case, your Honor, has to do with, I believe it's fraud.

3              I can pull out my copy of the case, your Honor, if you

4       to talk some more about the Goffe.

5              But the Duris case is more of a traditional injury

6       case.  It has to do with stevedores and someone -- someone who

7       was injured on the job -- and his effort to hold his employer

8       accountable when the employer had done something similar to

9       what's been -- what's happened here is it moved outside -- or

10      from Ohio and reincorporated in a different state.  So that's

11      the Duris case, your Honor.

12             So what the Court's in Goffe and Duris held was that,

13      again, for purposes of personal jurisdiction, you can't avoid

14      accountability by simply changing the state of incorporation.

15      You're going to be held accountable in that state, and here it

16      would be Delaware, for the conduct -- the activities that you

17      undertook while you were incorporated here.

18             THE COURT:  But you're not actually trying to hold them

19      accountable for activities they undertook while they were here.

20             You're saying, I think -- tell me if I'm wrong -- you

21      know, they're causing us a problem by, in effect, asserting the

22      word violating their patents, without actually suing us, and so

23      we want a Declaratory Judgment to end this uncertainty, right?

24             MR. KRAVITZ:  I think that's a fair summary, your

25      Honor, but I don't want to minimize the Declaratory Judgment

1      Act.  It's a viable cause of action.  Congress decided, you

2      know, when it enacted Section 2201 that it was -- there's now a

3      -- a right for a company to take the initiative when that

4      company feels threatened, instead of living under the threat of

5      litigation --

6              THE COURT:  At the time that you took the initiative,

7      you certainly did not feel threatened by GeoTag Delaware,

8      because they didn't exist any more.

9              MR. KRAVITZ:  We did not feel threatened by GeoTag at

10     the time we filed the Declaratory Judgment action.  That's

11     correct, your Honor.

12             But that's not what we're arguing.  We're arguing that

13     the law allows, for purposes of personal jurisdiction, to tie

14     that back to GeoTag Delaware, because that is the company that

15     was formed, incorporated in Delaware for one purpose, and one

16     purpose only, it was to sue and enforce the '471 patent.

17             THE COURT:  It was incorporated to be a litigation

18     machine.

19             MR. KRAVITZ:  To be a litigation machine, your Honor.

20             And to be blunt about it, GeoTag Delaware was in the

21     business of making not widgets, but making lawsuits, okay?  And

22     it chose to locate its factory in Texas, okay?

23             So this really is analogous to a situation I think that

24     you alluded to earlier, your Honor.  In a situation where if

25     they were a Delaware company, a Delaware company that was

1    incorporated here for the purposes of making widgets, and it

2    wanted to manufacture those widgets in Texas at a factory, and

3    that widget -- one of those widgets went on to hurt somebody

4    during the period of time when it was incorporated in Delaware,

5    but later that company decides they want to move and became a

6    Texas corporation, or a Kansas corporation, that doesn't allow

7    the company to avoid being held liable in Delaware of activity

8    that occurred during the period of time that it was here.

9         THE COURT:  Well, let's assume the widgets were sold

10   in Texas, but somewhere else, so you would need to create

11   jurisdiction in Delaware by the actual event.  That really does

12   fix -- that's a defined sort of transaction taking place, and it

13   really does -- well, I mean it doesn't in a way fix rights to

14   liabilities in a way that, you know, or uncertain of our status

15   relative to GeoTag is a lot more nebulous?

16        MR. KRAVITZ:  I'll grant you, your Honor, it's more

17   nebulous than a situation with an exploding widget, where there

18   is -- where there is a moment in time where that happens, right?

19   And a Declaratory Judgment, particularly in the context of a

20   threat of infringement, is more nebulous.  It's harder to

21   pinpoint than to tell you exactly when you have that perception,

22   but it is a viable cause of action, and it did cause Oracle

23   harm, and that harm did take place.

24        Oracle -- Oracle -- I don't think there is any

25   dispute -- I don't believe there's any dispute that if GeoTag

1      Delaware were still incorporated, if it still existed as a

2      Delaware corporation, that we wouldn't be having this

3      conversation.

4              THE COURT:  We might be having a different

5      conversation, but, clearly, a Delaware corporation in existence

6      today.

7              There's personal jurisdiction here?

8              MR. KRAVITZ:  Correct.

9              And if -- so what we're arguing, your Honor, on the

10     reliances on these cases, is that permanent jurisdiction existed

11     for this entity, GeoTag Delaware, for a period of 15 months of

12     time, during which this litigation machine was turning out those

13     litigation widgets, your Honor.  Those lawsuits.

14             And during that 15 month period of time, Oracle's

15     customers were sued.  They were ensnared in this four to 500

16     litigation machine.  And it's during that period of time that

17     the Declaratory Judgment Act, or the Declaratory Judgment cause

18     of action manifested itself.

19             And, so, so we're asking the Court to simply allow us

20     to pursue our remedy against the Delaware entity or against the

21     Texas entity by virtue of the Delaware entities actions, which,

22     again, we believe is exactly consistent with what Duris says we

23     can do, and what Goffe says we can do, which is that they can't

24     avoid the accountability for that period of time -- we're not

25     talking about what happened yesterday, or what happened after

1      they incorporated in Texas -- we're talking about that period of

2      time when they were incorporated.  When they were enjoying the

3      benefits of a Delaware corporation, the favorable tax structure.

4             All the reasons why corporations love to be formed

5      here.  All the reasons why your Honor's docket has been so

6      clogged, and other courts in this state are so clogged.  This is

7      a very attractive state for corporations to be formed in.

8      That's not a surprise to anyone.

9             THE COURT:  Yes.  Well, that's not a surprise.

10            You said besides Goffe, you said something about a

11     Sixth Circuit case.

12            MR. KRAVITZ:  That's the Duris case, your Honor, versus

13     Erado Shipping.  That's a 1982 decision from the Sixth Circuit,

14     and that some very interesting language in it, your Honor, which

15     we quoted in the brief.

16            THE COURT:  Wait a second.

17            Okay.

18            MR. KRAVITZ:  D-U-R-I-S.

19            THE COURT:  Yes, yes.  No, no, no, the table of

20     contents that it actually appears on.

21            MR. KRAVITZ:  And in the Duris case, the Court wrote

22     that any other ruling; namely, not allowing this to be

23     adjudicated in the original jurisdiction, would allow

24     corporations to immunize themselves by formalistically changing

25     their titles.

```
 1              THE COURT:  Well, but you see for most of them, it

 2     wouldn't.  I mean for the widget that's disclosed in Texas -- I

 3     mean I think it's clear the right of liability -- well, in any

 4     event, keep going.

 5              MR. KRAVITZ:  Your Honor, at the bottom what we're

 6     talking about here is, we have a Delaware corporation at the

 7     time, GeoTag Delaware, suing another Delaware corporation,

 8     Oracle's customers, many of whom are Delaware corporations

 9     themselves.  And really --

10              THE COURT:  But for the fact that Oracle is a Delaware

11     corporation, or that Oracle customers are a Delaware

12     corporation, that seems pretty irrelevant to anything.

13              MR. KRAVITZ:  Well, I don't -- well, it -- I don't

14     think it's irrelevant, your Honor.  It's not.  It doesn't go to

15     the heart of the personal jurisdiction analysis about whether

16     this Court has personal jurisdiction over GeoTag here.

17              That's what we're talking about here.  We're talking

18     about a Delaware company suing another Delaware company's

19     customers.

20              And GeoTag is taking the position that this Delaware

21     Federal Court doesn't have the authority to --

22              THE COURT:  If you change it to GeoTag never being a

23     Delaware corporation, if they had a Maryland corporation, and

24     had sued all their Delaware -- all of your -- you know, sued

25     Oracle eventually, and sued Oracle's customers in 2009, or 2010,
```

1        or whenever they were doing it, sued them in Texas, we wouldn't

2        be here.

3              MR. KRAVITZ:  I'm not sure we'd be here, your Honor.  I

4        think that's probably right.

5              THE COURT:  Come on.  We wouldn't be here.

6              There couldn't possibly be jurisdiction over this case

7        but for the fact that GeoTag, you know, when it was doing some

8        of the Texas activity, a large part of it was a Delaware

9        corporation.

10             MR. KRAVITZ:  Based on what we know, I would agree,

11       your Honor.  Frankly, we didn't have a lot of visibility as to

12       what GeoTag was up to in Delaware.  We have very little

13       information about that.

14             THE COURT:  But you have -- I did see somewhere in here

15       a Request for Discovery, which struck me as being not

16       withstanding the Third Circuit's general willingness to allow

17       some jurisdictional discovery to be, in my opinion, pretty far

18       fetched, when you want to find something that is beyond the

19       facts that you already know, which is that they were

20       incorporated in Delaware for 15 months, or whatever period of

21       time.  Clearly, everything else is happening in Texas.

22             MR. KRAVITZ:  Well, your Honor, again, I don't want --

23       I don't want to belabor that point, but I don't know anything

24       about what GeoTag may have or may not have done in Delaware,

25       other than the fact that I know they were incorporated here for

```
1      15 months.

2              I don't know whether they were raising money here.  I

3      don't know whether they were engaged in any sort of business

4      here during that 15 month period.  I don't have that

5      information.

6              THE COURT:  Right.  Okay.

7              MR. KRAVITZ:  But based on what we know, your Honor,

8      your hypothetical about Maryland, I can't disagree with that.

9              So, clearly, the nub of this argument is, is GeoTag

10     Delaware's incorporation here for 15 months -- again, while they

11     formed a company for the sole purpose of engaging in this

12     litigation machine?

13             MR. DORSNEY:  Your Honor, I have to object to this

14     constant referral of GeoTag as a litigation machine.

15             THE COURT:  Well, Dorsney, it's an argument.

16             Mr. DORSNEY:  It's becoming a little over the top for

17     my taste, your Honor.  I'm sorry.

18             THE COURT:  I don't think it's unfair.  I mean it's not

19     illegal, but I don't think it's unfair.

20             But, in any event, go ahead.

21             MR. KRAVITZ:  They formed the company for that purpose,

22     your Honor, for the purpose of enforcing the '474 patent.  It's

23     only assets.  Again, enjoined the benefits of Delaware

24     corporations, whatever they happened to be.

25             And the legislature of this state has decided -- has
```

```
 1     enacted laws that say, The surviving company, in the context of

 2     a merger, is responsible for those continuing obligations.  You

 3     can't simply pack up your tent, go find another state,

 4     incorporate in that other state, and then walk away and wash

 5     your hands of any obligations that you had during the period of

 6     time when you did.

 7            THE COURT:  Well, that kind of gets to whether the kind

 8     of things that come up in a Declaratory Judgment are

 9     obligations.

10            MR. KRAVITZ:  It's an obligation to answer for

11     allegations made against you in a Court of Law.  Certainly

12     that's an obligation that Delaware companies are -- are hindered

13     with.  That is a consequence of being a Delaware corporation

14     under 122, Section 2.

15            That they -- Delaware corporations incorporated here in

16     Delaware must be subject to lawsuits here.  That's a statement

17     of fact.  And, in fact, that's why GeoTag left.  They didn't

18     want to be subject to that.

19            THE COURT:  Let me ask you this question:  If I were

20     inclined to grant a Motion to Dismiss, does the case get

21     transferred to Texas or do you want to just be dismissed?

22            MR. KRAVITZ:  I would probably have to say, I would

23     want it just to be dismissed, your Honor.

24            THE COURT:  All right.

25            I think I've got your point of view.
```

1              Is there anything else that you want to say?

2              MR. KRAVITZ:  30 seconds to confer with co-counsel,

3       your Honor?

4              THE COURT:  Surely, yes.

5              MR. KRAVITZ:  Your Honor, so just two minutes, maybe

6       even 90 seconds.

7              I think one of the fundamental questions that the Court

8       needs to consider in this analysis is, is what we're attempting

9       to do here, and to exercise personal jurisdiction, or what we're

10      asking the Court to do is to exercise personal jurisdiction over

11      GeoTag.

12             Does that offend the notion of fair play?  Is it a

13      violation of due process?

14             I don't think that that argument resonates here, your

15      Honor.  Under the circumstances, they were incorporated.  They

16      even enjoyed the benefits of being a Delaware corporations.

17             And just as Microsoft and Google have done, your Honor,

18      what we are seeking to do here in Delaware is to have a clear

19      path to adjudicate the claims that have been made against

20      Oracle, okay?

21             What's going on in the Eastern District of Texas, your

22      Honor, is remarkable in terms of the number of defendants and

23      the number of lawsuits.  But, by the same token, it is a morass

24      in terms of trying to get clarity.  And for a company like

25      Oracle, which is responsible, ultimately responsible for -- Mr.

1       Bennett had mentioned, I think, a dozen indemnified parties.  We

2       actually have over 40 now.  There are over 40 companies that are

3       looking to Oracle to defend them in the Texas litigation.  And

4       it's not one case, your Honor, it's multiple cases, your Honor.

5               THE COURT:  As a practical matter, if there were

6       jurisdiction here, aren't all your clients all going to be

7       resolved before anything happens here with you?

8               MR. KRAVITZ:  Because of the Texas case, your Honor?

9               THE COURT:  Yes.

10              MR. KRAVITZ:  No, I actually -- I think just the

11      opposite is true.

12              What is going to happen in Texas is, let's say

13      hypothetically an Oracle customer is among the lucky few that

14      get to go in the first trial against GeoTag.  That's one custody

15      with presumably one Oracle product.  And there will be, you

16      know, a trial that will have multiple defendants.  Multiple

17      different products.  Perhaps there will be some Microsoft

18      products.  Perhaps they'll be whatever.  Store locators and job

19      locaters.  And it is going to be extremely confusing.  It's

20      going to be extremely time limited.  And Oracle is going to have

21      just one slice.  One small opportunity to defend its one

22      product, when, in fact, if I'm not mistaken, your Honor, there

23      are at least four Oracle products that have been accused in this

24      litigation in the Texas actions.

25              So what's going to happen in Texas will be certainly

1    interesting to Oracle.  Will of an impact on Oracle.  But it's

2    not going to give any sort of global resolution for Oracle.

3        Only a case that has -- where Oracle is the sole

4    defendant, so that all of Oracle's products can be at issue, and

5    Oracle can defend all its products in terms of non-infringement,

6    your Honor.

7        Only, under those circumstances, is there any sort of

8    efficiency for a company like Oracle.  Otherwise, it's a piece

9    meal trial, after trial, after trial down there for different

10   products.

11       THE COURT:  Well, but I'm just thinking, you know, it

12   has taken Microsoft and Google two years to get to where they

13   are today in Delaware.

14       MR. KRAVITZ:  We tried hard to join them.

15       THE COURT:  Yes, yes, that's part of the reason why you

16   didn't.

17       So it may be the case that Judge Gilstrap will try so

18   many cases on December 2nd.  I wouldn't be surprised if he

19   schedules another trial for December 9th.  So, you know, he'll

20   get through them.

21       MR. KRAVITZ:  I have no doubt he will, your Honor, but

22   it will be in a manner that is significantly less efficient for

23   a company like Oracle, which is going to have to deal with this

24   on a piece meal basis.

25       THE COURT:  Well, that is kind of my point is, you

```
1    know, the patent cases that I'm getting today are scheduled for

2    trial in, you know, 2015.  So I'm quite confident that Judge

3    Gilstrap is going to exhaust all 400 of those defendants before

4    we get to 2015.  Maybe Oracle would have its trial, but all of

5    its clients would have their trials, or have their cases

6    resolved long before anything happens here?

7             MR. KRAVITZ:  That's a fair point, your Honor.

8             If this Court were inclined to deny the motion to find

9    that there's personal jurisdiction here, certainly we would

10   approach GeoTag with a proposal under the customer suit

11   exception and say, Look, it doesn't make --

12            THE COURT:  They haven't been widely receptive to those

13   sort of proposals.

14            MR. KRAVITZ:  They have not been wildly receptive to

15   that yet, your Honor.  They're reasonable people.  And I'm sure

16   we could have a discussion about the efficiencies of doing

17   something like that, because it doesn't make sense to waste --

18   well, to spend or invest two Federal Courts considerable time

19   working on parallel tracks.

20            THE COURT:  All right.  Okay.

21            Let me hear a little bit more from Mr. Bennett.  Maybe

22   I will take a recess for a minute.

23            MR. KRAVITZ:  Thank you.

24            THE COURT:  So, Mr. Bennett, Mr. Kravitz says that you

25   didn't respond to Goffe and Duris in your reply brief.  So this
```

1      is your opportunity.

2              What do you think about them?

3              MR. BENNETT:  Well, I think Goffe and Duris aren't

4      relevant, and I believe we did respond to them, because this

5      refers to specific -- they refer to having specific debts,

6      liabilities, and duties.

7              Now, in a Declaratory Judgment action, the filing of a

8      lawsuit by GeoTag does not automatically create any type of

9      cause of action, a Declaratory Judgment.  There has to be some

10     sort of uncertainty or feel a threat by Oracle that would lead

11     to this Declaratory Judgment, because it's trying to resolve

12     uncertainty.

13             THE COURT:  Well, you just kind of passed over you

14     think they're irrelevant.

15             Why are they irrelevant?

16             MR. BENNETT:  Because this lawsuit isn't related to

17     debts, liabilities, or duties of GeoTag Delaware.

18             The actions are that these lawsuits in Texas, Oracle

19     wasn't even aware of a threat.  The only threat that they were

20     actually were aware of was from GeoTag Texas, because --

21             THE COURT:  And the only threat they have to actually

22     be concerned about today is from GeoTag Texas because GeoTag

23     Delaware is gone, right?

24             MR. BENNETT:  Correct.

25             And GeoTag's business is actually in Texas.  That's

```
 1        where they have offices.  That's where their CEO is.

 2              THE COURT:  Yes, yes, I heard that before.

 3              MR. BENNETT:  Well, the fact that the CEO is one of the

 4        inventors --

 5              THE COURT:  No, no, I'm just saying I heard that

 6        before.  I know where their offices are.

 7              MR. BENNETT:  In terms of a threat, the threat all

 8        occurred from GeoTag Texas.

 9              At the time the lawsuit was filed, the threat was only

10        from GeoTag Texas, so in terms of personal jurisdiction,

11        determined at the time the lawsuit was filed, this threat has to

12        do with GeoTag Texas, not GeoTag Delaware.

13              So I think -- I think it's just really a very simple

14        issue, is that this is a Declaratory Judgment action related to

15        a feeling of a threat by Oracle.

16              The only evidence they have in their brief of a threat

17        was from GeoTag Texas, because it was all after GeoTag Delaware

18        ceased to exist.  So, and again, it's -- it's a feeling of

19        uncertainly.  There's no actual, you know, hitting somebody with

20        a hammer or some object exploding that GeoTag did.  This is try

21        and alleviate some of this uncertainty by Oracle to a potential

22        lawsuit.

23              In fact, in terms of determining this issue in one

24        court, GeoTag has filed a lawsuit against Oracle in Texas.  That

25        was, in part, because GeoTag was also serving subpoenas on
```

1     Oracle in Texas related to the Texas defendants.

2             So everything is going on in Texas.  We'll be in trial

3     in Texas.  Oracle's attorneys --

4             THE COURT:  Yes, I'm pretty sure that it -- right.

5             I'm sorry.  Continue your thought.

6             MR. BENNETT:  Oracle's attorneys are literally running

7     the litigation for their defendants in Texas.  They asked for

8     mediation in Texas.

9             We think that this case in Delaware should be

10    dismissed, because we are already proceeding in Texas.

11            THE COURT:  All right.

12            Let me just take a recess for a couple of minutes here,

13    okay?

14            Don't go anywhere.

15            (At this time the Court left the bench.)

16            (Pause.)

17            THE COURT:  All right.  Please be seated.

18            You know, I think this is honestly kind of an

19    interesting question here on the Motion to Dismiss, and I did go

20    back and re-review the Goffe and Duris cases that Mr. Kravitz

21    pointed me to.

22            Honestly, I don't think they really helped very much,

23    because they sort of stand for the proposition, which doesn't

24    seem to be really too much in dispute, but there are certain

25    kind of rights and liabilities that attach to a corporation at a

1     point in time.  And that then that corporation merges into some

2     other corporation, and the constituent corporation, the

3     surviving corporation can't run away from whatever jurisdiction

4     the constituent corporation gave to it.

5          But the Declaratory Judgment to me is a different sort

6     of case.  And, you know, the key allegation in a Declaratory

7     Judgment suit, which is Paragraph 9 of the Complaint here, which

8     was filed on, I guess, May 18th of 2012, there is an actual

9     controversy between the plaintiffs and GeoTag regarding whether

10    use of plaintiff's job search database products infringes the

11    '474 patent, and whether the patent is valid.

12         You know, this strikes me as an actual controversy,

13    talking about the present day.  And, for example, you know, some

14    time between the nine months when GeoTag Delaware became a

15    constituent corporation of GeoTag Texas, would have been a

16    covenant not sue, or something like that, there would be no

17    controversy.

18         So it really depends to me, it seems what's going on at

19    the time the suit was filed, and I think there's very little

20    dispute at the time the suit was filed, there was no dispute

21    that GeoTag was a Texas corporation, and that at that time there

22    was nothing that would give jurisdiction over GeoTag Texas in

23    Delaware.

24         So I'm going to dismiss the Complaint and I will issue

25    an order promptly.

1              It is an interesting question, and I'm certainly not

2      saying that I'm necessarily right, but it does strike me that

3      GeoTag has the better of the argument here.

4              All right.  Thank you very much.

5              MR. KRAVITZ:  Your Honor, may I ask, respectfully, a

6      question.

7              Is this an issue that you might certify for appeal?

8              THE COURT:  I'm dismissing, so you can appeal.

9              I don't need to certify it, right.

10             MR. KRAVITZ:  Yes, I guess that's right, your Honor.  I

11     think that's right.

12             (Court adjourned at 4:00 o'clock p.m.)

13                            * * *

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25